# STATE OF MICHIGAN

# COURT OF APPEALS

HARPER WOODS RETIREES ASSOCIATION, JUDITH DEKEYSER, DONALD KUCZBORSKI, JAMES MANOR, and JEFFREY MANOR, and Others Similarly Situated,

Plaintiffs-Appellants,

v

CITY OF HARPER WOODS,

Defendant-Appellee.

PUBLISHED
October 1, 2015
9:00 a.m.

No. 318450
Wayne Circuit Court
LC No. 12-013098-CK

Before: FORT HOOD, P.J., and JANSEN and GADOLA, JJ.

GADOLA, J.

Plaintiffs appeal as of right from the trial court's order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact). We reverse and remand for further proceedings consistent with this opinion.

## I. FACTS

The Harper Woods Retirees Association (HWRA) is a nonprofit corporation composed of individuals who were once employed by defendant, and retired between the 1980s and early 2000s. The individually named plaintiffs are retirees who hold the following positions within the HWRA: Jeffrey Manor, president; James Manor, treasurer; Judith DeKeyser, secretary; and Donald Kuczborski, trustee. According to plaintiffs' complaint, members of the HWRA obtained vested health care benefits through multiple collective bargaining agreements (CBAs) and personal contracts with defendant. These agreements identified specific health insurance plans, riders, and prescription drug co-pays available to retirees.[1] Plaintiffs alleged that retirees

---

[1] Plaintiffs attached three CBAs to their complaint. The January 1, 2004 through December 31, 2006 CBA between defendant and the International Association of Firefighters, Local No. 1188, stated the following:

previously received Blue Cross-Blue Shield of Michigan (BCBS-M) "Traditional," "Master Medical," or "Community Blue-1" insurance plans, which guaranteed either no deductibles for treatment or "first dollar" deductibles of approximately $10 for office visits. Plaintiffs also claimed that some of their original health plans had a $2 deductible for generic prescriptions and a $5 deductible for name brand prescriptions.

> For any employee covered by this Agreement and his dependents, the City will pay the full cost of Blue Cross Preferred Provider Organization (PPO) Comprehensive Hospital Semi-Private Service with Riders D45NM, MM, ML, IMB, DCCR, Blue Shield MVF-1 service with $2.00 prescription drug program, and out of state reciprocity rider. Effective August 1, 1998, the prescription drug rider shall be $10.00.
>
> Upon an employee's retirement from employment by the City, and during the period of his retirement thereafter . . . the City will pay the full cost of the above health care insurance coverages for such retiree and his spouse, until each has reached age 65 and, from and after his reaching age 65, shall pay the full cost of his Blue Cross/Blue Shield Care Insurance Plan which supplements his own Medicare Health Care coverage.
>
> *  *  *
>
> For retirees and their spouses, the insurance coverage shall continue to be the existing Traditional BCBS plan (#63049/905), provided however that for those employees retiring on or after October 1, 2005, the prescription co-pay shall be increased from $2 to $5.

The 2000 through 2002 CBA between defendant and the American Federation of State, County and Municipal Employees, Local No. 1107, stated the following:

> [F]or all retirees from the City's service who were members of this Local at the time of retirement from the City, the City will pay, during the term of this agreement, the full cost of Blue Cross Comprehensive Hospital, Semi-Private, Preferred Provider Organization, Service with Riders D, D45NM, MM, ML, Pap Smear and Ten Dollar ($10.00) Prescription Drug Program Rider and of Blue Shield MVF-1 Service.

The January 1, 2000 through December 31, 2002 CBA between defendant and the Police Officers Labor Council stated the following:

> The City agrees to pay the premium of the retirees for the Blue Cross-Blue Shield Plan listed above except such plan shall be traditional rather than PPO, and to provide additional coverage for the employee's spouse . . . .
>
> The prescription drug rider for all retirees shall be a $ 2.00 co-pay plan.

-2-

On April 12, 2012, defendant announced plans to unilaterally alter its retirees' health care coverage. According to plaintiffs' complaint, defendant sought to move retirees under the age of 65 into a BCBS-M "Community Blue-2" insurance plan and retirees over the age of 65 into a BCBS-M "Medicare Advantage, Mid-Option" insurance plan. Plaintiffs alleged that the new plans "would include co-pays and deductibles amounting to $1,000.00 to $1,500.00 per year, per retiree" and would require retirees who previously paid $2 and $5 co-pays for their prescriptions to increase co-pays to $5 for generic prescriptions and $20 for name brand prescriptions.

In June 2012, individual retirees established the HWRA to oppose defendant's proposed changes. However, following two meetings between defendant and the HWRA, defendant maintained that its retiree health care benefits expired upon the term end of the relevant CBAs, giving defendant the discretion to alter retiree health insurance coverage. On July 9, 2012, city council approved defendant's alterations, and on August 1, 2012, the changes became effective.

In October 2012, plaintiffs filed a complaint alleging breach of contract, seeking a declaration that defendant breached its contracts, enjoining further alteration of retiree benefits, and ordering the return of previous health insurance coverage, and alleging defendant violated the Contracts Clause of the United States Constitution. Plaintiffs also sought class certification for the 88 members of the HWRA. The trial court initially refused to certify the membership of the HWRA as a class. However, following a motion hearing on June 28, 2013, the court instructed plaintiffs to reintroduce their motion for class certification, and instructed defendant to bring a motion for summary disposition on the question of whether a municipality may unilaterally alter the health care benefits of its retired employees.

At a hearing in September 2013, the court addressed both motions. First, the court granted plaintiffs' motion for class certification in part, defining the certified class to include all of defendant's employees who (1) were covered by a CBA at the time of retirement or (2) had a personal contract with defendant at the time of retirement. However, the trial court did not identify the specific persons included in the class certification. Next, addressing defendant's motion for summary disposition, the court relied on the Sixth Circuit Court of Appeals' holding in *Reese v CNH America LLC*, 694 F3d 681 (CA 6, 2012) to conclude as a matter of law that employers may unilaterally alter retirees' health insurance coverage provided in a CBA if the alterations are reasonable. Because plaintiffs had not challenged the reasonableness of defendant's health insurance alterations, the trial court granted defendant's motion.

Plaintiffs appealed the trial court's summary disposition order as of right to this Court. On appeal, plaintiffs argued that the lower court erred in granting defendant's motion for summary disposition and failed to provide proper notice to class members after certifying the case as a class action. We held oral argument on the matter on February 4, 2015. Shortly thereafter, we issued an order remanding the case for the limited purpose of identifying the members of the certified class and providing them notice in compliance with MCR 3.501(C).[2]

---

[2] We also instructed the parties to submit supplemental briefing on the vesting of retirement benefits in light of the United States Supreme Court's recent decision in *M & G Polymers USA, LLC v Tackett*, 574 US ___; 135 S Ct 926; 190 L Ed 2d 809 (2015).

*Harper Woods Retirees Assoc v Harper Woods*, unpublished order of the Court of Appeals, entered February 13, 2015 (Docket No. 318450). In July 2015, the trial court submitted an order on remand certifying the class and identifying the class members. Now that the members of the class have been identified, we address plaintiffs' remaining arguments on appeal.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on summary disposition. *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). Defendant moved for summary disposition under both MCR 2.116(C)(8) and (C)(10), and the trial court did not specify under what rule it decided the motion. However, because the court decided defendant's motion on purely legal grounds without reference to evidence outside the pleadings, we review the motion under MCR 2.116(C)(8).[3] *Spiek v Dep't of Transp*, 456 Mich 331, 338; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). In reviewing the motion, courts must accept as true all well-pleaded factual allegations within the complaint. *Wade v Dep't of Corrections*, 439 Mich 158, 162-163; 483 NW2d 26 (1992). A decision granting a motion under MCR 2.116(C)(8) is proper if the claims alleged are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id.* at 163. We review de novo questions regarding interpretation of a contract. *In re Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007), aff'd 480 Mich 19 (2008).

## III. DISCUSSION

Plaintiffs first argue that the trial court erred in granting defendant's motion for summary disposition after concluding that, under *Reese*, 694 F3d 681, defendant could unilaterally modify any retiree health insurance benefits provided under its CBAs or personal contracts, regardless of whether the rights had vested, so long as the modifications were reasonable. We agree.

In Michigan, "[t]he foundational principle of our contract jurisprudence is that parties must be able to rely on their agreements[,] . . . [which] applies no less strongly to collective bargaining agreements." *Macomb Co v AFSCME Council 25*, 494 Mich 65, 80; 833 NW2d 225 (2013). "A collective bargaining agreement, like any other contract, is the product of informed understanding and mutual assent." *Port Huron Ed Ass'n v Port Huron Area Sch Dist*, 452 Mich 309, 327; 550 NW2d 228 (1996). When contractual language is unambiguous, courts must interpret and enforce the language as written because it reflects, as a matter of law, the parties' intent. *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275 (2009).

---

[3] In contract-based actions, any contracts attached to the complaint are considered part of the pleadings. *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003); see also MCR 2.113(F). Plaintiffs attached excerpts of 33 CBAs and six personal contracts to its response to the motion for summary disposition. The trial court did not consider these contracts in deciding the motion for summary disposition. Rather, the court concluded that, as a matter of law, an employer could unilaterally alter retiree health care benefits found in a CBA or personal contract if the alterations were reasonable.

"[T]he principle of freedom to contract does not permit a party *unilaterally* to alter [an] original contract." *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364; 666 NW2d 251 (2003). Rather, when the alteration of a provision in a CBA "affects vested rights already accrued[,] [the change] may give rise to a cause of action in contract." *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 530; 473 NW2d 652 (1991).

The trial court erred in concluding that defendant could unilaterally alter the health insurance benefits provided under its CBAs and personal contracts as a matter of law. Generally, unilateral alteration of contracts is prohibited because "mutuality is the centerpiece to waiving or modifying a contract." *Quality Prod*, 469 Mich at 364.[4] The trial court also erred in holding that the reasonableness of defendant's proposed alterations, in light of the city's alleged financial crisis, was a proper basis upon which to permit or refuse enforcement of the contractual provisions at issue. In Michigan, "[a] mere judicial assessment of 'reasonableness' is an invalid basis upon which to refuse to enforce contractual provisions." *Rory v Continental Ins Co*, 473 Mich 457, 470; 703 NW2d 23 (2005). Further, rising medical insurance costs and the city's financial situation are irrelevant to the inquiry because the fact that a contractual obligation "proved to be more onerous . . . than anticipated is no defense." *Johnston v Miller*, 326 Mich 682, 696; 40 NW2d 770 (1950).

In ruling that defendant could unilaterally alter any of its retirees' health care benefits as a matter of law, the trial court found the Sixth Circuit's decision in *Reese*, 694 F3d 681, controlling. In *Reese*, retirees brought suit against their employer seeking a declaration that they were entitled to lifetime health insurance benefits under their CBAs and an injunction preventing their employer from altering the level of health benefits then in effect. The Sixth Circuit held that when an employer and its retirees "did not perceive the relevant CBAs as establishing fixed, unalterable benefits," an employer "could make 'reasonable' changes to the healthcare plan covering eligible retirees." *Id.* at 684. The court described "reasonable" alterations as those that are reasonably commensurate with the former insurance plan, those that are reasonable considering what medical care is currently available, and those that provide benefits roughly similar to the benefits provided to current employees. *Id.* at 685. The court then offered a nonexhaustive list of factors for the trial court to consider when determining if alterations are reasonable. *Id.* at 685-686.

In this case, the trial court was not bound to follow *Reese*. "Although lower federal court decisions may be persuasive, they are not binding on state courts." *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004). Further, *Reese* does not stand for the proposition that an employer may always unilaterally alter its retirees' health care benefits under a CBA,

---

[4] The presence of a modification clause in a written contract also raises a presumption, as a matter of law, that a contract may not be modified absent mutual assent. *Quality Prod*, 469 Mich at 372. Although plaintiffs did not attach the entirety of each CBA to their complaint, at least one of the attached CBAs includes a modification clause providing that the agreement would remain in full force and effect absent written notice, renegotiation, and "agreement upon a new contract."

regardless of the CBA's specific language, so long as the alterations are reasonable. Rather, the *Reese* court indicated that a retiree's right to health insurance benefits under a CBA could be unilaterally altered if evidence indicated the parties intended to permit such alterations, not because vested health insurance benefits under a CBA are unilaterally alterable as a matter of law.[5] Thus, defendant and the trial court erred by interpreting *Reese* as establishing an absolute right for employers to unilaterally alter health insurance coverage for retirees.

Although the trial court erred in concluding that an employer may unilaterally alter any health insurance benefits included in a CBA or personal contract as a matter of law so long as the alterations are reasonable, the preliminary question remains whether plaintiffs had vested rights to the health benefits they now claim. " 'Under established contract principles, vested retirement rights may not be altered without the [retiree]'s consent.' " *Butler v Wayne Co*, 289 Mich App 664, 672; 798 NW2d 37 (2010), quoting *Allied Chem & Alkali Workers of America v Pittsburgh Plate Glass Co*, 404 US 157, 181 n 20; 92 S Ct 383; 30 L Ed 2d 341 (1971). However, in order to demonstrate that a benefit conferred in a CBA or personal contract is deemed vested, a retiree must show that (1) they had a contractual right to the claimed benefit that was to continue after the agreement's expiration, and (2) that the right was included in their respective contracts at the time of retirement. See *Butler*, 289 Mich App at 672.

Plaintiffs suggest that their right to the specific health care benefits included in their CBAs and contracts continued indefinitely after retirement, regardless of whether the explicit terms of the contract indicated that the parties intended those benefits to continue after the agreements' expiration. Such a position is inconsistent with ordinary principles of contract law.

In *M&G Polymers USA, LLC v Tackett*, 574 US ___; 135 S Ct 926; 190 L Ed 2d 809 (2015) the United States Supreme Court rejected the Sixth Circuit's decision in *UAW v Yard-Man, Inc*, 716 F2d 1476 (CA 6, 1983), which held that in the absence of contrary extrinsic evidence, courts should presume that retiree benefits provided in a CBA are guaranteed for the lifetime of any employee who retires under the CBA. The *Yard-Man* court "inferred that parties

---

[5] The Sixth Circuit also adopted this interpretation of *Reese* in *United Steel, Paper & Forestry, Rubber, Mfg Energy, Allied Indus & Serv Workers Int'l Union v Kelsey-Hayes Co*, 750 F3d 546, 548-551 (CA 6, 2014) ("[In *Reese*,] the scope of the vested right to health care could be unilaterally altered because that is what the evidence indicated the parties intended in that case, not because all vested health care rights in all CBAs are subject to unilateral alteration as a matter of law."). The Sixth Circuit recently vacated its decision in *United Steel* on other grounds and remanded the case to the district court for reconsideration because the court relied on an inference established in *UAW v Yard-Man, Inc*, 716 F2d 1476 (CA 6, 1983), to conclude that the retirees in that case had vested lifetime rights to health care benefits provided under a CBA. *United Steel, Paper & Forestry, Rubber, Mfg Energy, Allied Indus & Serv Workers Int'l Union v Kelsey-Hayes Co*, 795 F3d 525 (CA 6, 2015). In *Tackett*, 574 US at ___, the United States Supreme Court overruled *Yard-Man*, concluding that a judicially created inference that parties intended benefits under a CBA to vest for life upon retirement was inconsistent with ordinary principles of contract law.

would not leave retiree benefits to the contingencies of future negotiations, and that retiree benefits generally last as long as the recipient remains a retiree . . . [which] 'outweigh[ed] any contrary implications derived from a routine duration clause terminating the agreement generally.' " *Tackett*, 574 US at ___, quoting *Yard-Man*, 716 F2d at 1482-1483 (second alteration in original). Thus, although the *Yard-Man* court recognized that "traditional rules of contractual interpretation require a clear manifestation of intent before conferring a benefit or obligation," the duration of the conferred benefit was not subject to this conventional restraint. *Tackett*, 574 US at ___ (citation and quotation marks omitted).

In *Tackett*, the Supreme Court overruled *Yard-Man*, holding that a presumption of lifetime vesting of retirement benefits violates traditional rules of contract interpretation. The Supreme Court explained that under traditional contract interpretation principles, courts should not construe ambiguous writing to create lifetime promises and that generally, " 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.' " *Tackett*, 574 US at ___, quoting *Litton Fin Printing Div, Litton Business Sys, Inc v NLRB*, 501 US 190, 207; 111 S Ct 2215; 115 L Ed 2d 177 (1991). The Supreme Court noted that traditional contract principles do not "preclude the conclusion that the parties intended to vest lifetime benefits for retirees" because "a collective-bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the agreement's expiration." *Tackett*, 574 US at ___ (citation and quotation marks omitted; alterations in original). However, "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." *Id.* at ___. We conclude that the Supreme Court's reasoning in *Tackett* is consistent with Michigan's contract jurisprudence regarding CBAs, which applies with equal force in both the public and private sectors in this regard. As our Supreme Court has explained:

> The foundational principle of our contract jurisprudence is that parties must be able to rely on their agreements. This principle applies no less strongly to collective bargaining agreements: when parties to a collective bargaining agreement bargain about a subject and memorialize the results of their negotiation in a collective bargaining agreement, they create a set of enforceable rules—a new code of conduct for themselves—on that subject. A party to the collective bargaining agreement has a right to rely on the agreement as the statement of its obligations on any topic covered by the agreement. [*AFSCME Council 25*, 494 Mich at 80 (quotation marks and citations omitted).]

The task, then, is to examine each of the CBAs and personal contracts in effect at the time of retirement for the respective class members, and to determine whether the language of the provisions governing retiree health care benefits indicates that the parties intended the same benefits to continue after expiration of the agreements, or whether the benefits terminated upon expiration of the agreements, such that defendant was permitted to alter the benefits under future contracts. See *Butler*, 289 Mich App at 672. Below, plaintiffs attached excerpts of 33 CBAs and six purported personal contracts to their response to defendant's motion for summary disposition. The trial court did not address any of these agreements when issuing its decision granting summary disposition to defendant, instead ruling that alteration of health insurance benefits was appropriate as a matter of law so long as the alterations were reasonable. At the time, the members of the class had not been identified. In fact, they were only recently identified in an order from the trial court dated July 27, 2015, following the remand from this Court.

There is currently no evidence before us indicating what contracts apply to which class members based on each member's retirement date, whether all the relevant CBAs are included in the record, or whether additional provisions in the CBAs beyond the excerpts included below are necessary to properly interpret the relevant contractual provisions. Accordingly, the lower court record has not been sufficiently developed to permit this Court to engage in an independent review of the obligations contained in each of the agreements. Therefore, we remand this case to the trial court for further proceedings consistent with this opinion.

On remand, we instruct the trial court to determine what contracts apply to which individual class members, and then to apply ordinary contract principles to determine whether the parties intended the retiree health care benefits identified in each respective agreement to survive the expiration of the CBA, or whether the retirees' rights to the specifically identified health care benefits terminated upon expiration of the agreement, such that defendant was permitted to alter the benefits under future contracts.[6]

## IV. UNPRESERVED CLAIMS

Finally, plaintiffs argue that the trial court erred in granting summary disposition because a question of fact existed regarding whether defendant was in a state of financial crisis at the time it altered plaintiffs' health insurance coverage. The lower court did not address this issue in deciding defendant's motion for summary disposition, rendering it unpreserved. *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). The reason why a breaching party failed to fulfill its contractual obligations is not an element in a breach of contract claim. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). Because defendant's financial status is irrelevant to whether it breached its contractual duties, we choose not to address the parties' arguments regarding this issue on appeal.

Plaintiffs further argue that defendant violated city ordinances by altering retirees' health benefits. However, this issue was not raised in plaintiffs' statement of the questions presented. Issues not specifically raised in an appellant's statement of questions presented are not properly presented to this Court. *Grand Rapids Employees Indep Union v Grand Rapids*, 235 Mich App 398, 409-410; 597 NW2d 284 (1999). Accordingly, we also decline to address this issue.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Karen M. Fort Hood
/s/ Kathleen Jansen

---

[6] We emphasize that the outcome, i.e., whether or not a retiree's right to specific health insurance coverage extends beyond the expiration of the agreement under which they retired, may not be the same for each CBA and personal contract. Rather, the outcome must be dictated by applying traditional principles of contract interpretation to the language of each respective agreement.