# STATE OF MICHIGAN

# COURT OF APPEALS

<table>
<tr><td>In re P. E. K. SHANNON, Minor.</td><td>UNPUBLISHED<br>February 9, 2017<br><br>No.  333702<br>Montcalm Circuit Court<br>Family Division<br>LC No.  2015-000706-NA</td></tr>
</table>

Before:  MURPHY, P.J., and METER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent father appeals as of right the trial court order terminating his parental rights to one minor child under MCL 712A.19(b)(3)(g).  We affirm.

On appeal, father argues that we must address the merits of the lower court's decision to terminate father's parental rights under MCL 712A.19(b)(3)(g), and that termination of father's parental rights was not in the child's best interests.  "To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established."  *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).  This Court "review[s] for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence."  *Id*.  "A trial court's decision is clearly erroneous '[i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' "  *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012), quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989) (alteration in original).  "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error."  *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).  Deference should be given to the "trial court's special opportunity to judge the credibility of the witnesses."  *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

Initially, we note that father's argument relating to the statutory grounds is not properly before this Court because father did "not argue that the statutory grounds for termination were not proved."  *In re JS & SM*, 231 Mich App 92, 98; 585 NW2d 326 (1998), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000).  Therefore, this issue is abandoned.  *Id*.  Further, the issue is not properly presented to this Court because father's statement of his question presented only raises the best-interest issue.  See *Harper Woods Retirees Ass'n v Harper Woods*, 312 Mich App 500, 515; 879 NW2d 897 (2015) (declining to address an issue and stating, "Issues not specifically raised in an appellant's statement of

-1-

questions presented are not properly presented to this Court."). Nonetheless, we have considered the issue.

Termination under MCL 712A.19b(3)(g) is proper when "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Here, the record evidence supports the trial court's finding that father failed to provide proper care or custody for the child. Before this case began, father had limited to no involvement in the child's life. After this case began, father failed to take advantage of the opportunity to become involved in the child's life by failing to meaningfully participate in his case service plan. Specifically, father failed to attend 21 out of 30 scheduled parenting times, failed to take a parenting class, and failed to notify the Department of Health and Human Services (DHHS) when he acquired appropriate housing. With respect to parenting classes, father testified that he believed counseling sessions he attended were considered parenting classes. However, part of father's case service plan required father to verify completion of a parenting class with the DHHS. Father attended seven out of eight of his counseling sessions, and testified that he never received successful discharge papers. Therefore, even if father believed that these sessions were parenting classes, he still failed to fulfill this aspect of his case service plan.

Further, father bore the responsibility to participate in the services that were offered. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) ("While [the DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of [the parent] to participate in the services that are offered."). The child's caseworker testified that she provided father with a recommendation to a local parenting class that was compatible with his insurance issues, yet father never participated in the class. The child's caseworker also testified that she offered to drive the child to a location closer to father to facilitate parenting time more convenient to father, but father did not accept the child's caseworker's offer. Further, father was required to obtain suitable housing for the child. Apparently, father acquired suitable housing prior to the termination hearing, but failed to notify the DHHS on this development. As such, the DHHS was unable to verify father's housing or determine whether it was, in fact, suitable. Because father failed to participate in the services that were offered, he failed to benefit from those aspects of his case service plan.

Lastly, there is no evidence that father would be able to provide care and custody within a reasonable time because, even when father had the opportunity to participate and benefit from his case service plan, he continually refused to do so. See MCL 712A.19b(3)(g). In regard to parenting time, father was unable to attend a number of sessions between September 2015 and December 2015 due to transportation issues. However, uncontested evidence showed that father acquired a reliable vehicle sometime in November, yet father only attended one scheduled parenting time between December and February, at which time his parenting time was suspended. Further, father was ordered to attend a parenting class in August 2015. At the time of the termination hearing in June 2016, father had not attended a single class. Even if father believed his counseling sessions were parenting classes, father testified that he found out before

-2-

the termination hearing that he had not completed his counseling sessions or taken a parenting class. Father did not attempt to complete his counseling or attend a parenting class at any time prior to the termination hearing. Therefore, the record supports the conclusion that the conditions that led to termination continued to exist and that there was not a reasonable likelihood that father would be able to comply with his case service plan within a reasonable time. Accordingly, we are not left with a definite and firm conviction that a mistake has been made, nor that the trial court clearly erred in finding that there was sufficient evidence to establish this statutory ground.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App at 40. Appellate courts "review for clear error . . . the court's decision regarding the child's best interests." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "[T]he focus at the best-interest stage [is] always [ ] on the child, not the parent." *In re Moss*, 301 Mich App at 87. The trial court should weigh all the evidence available to it in determining the child's best interests, *In re Trejo*, 462 Mich at 353, and may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other considerations include "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

Here, the trial court found that termination was in the child's best interests in large part due to father's noncompliance with his case service plan. The trial court particularly emphasized father's missed parenting time. The trial court noted that father's lack of communication when he missed parenting time had a significant impact on the child emotionally and that the child was in relative placement with his great-grandparents and indicated that this placement offered the structure, permanence, and stability that the child needed.

The record establishes that father lacked the parenting ability necessary to care for the child. Father only attended 9 out of 30 scheduled visits with the child. On several occasions, father did not inform the DHHS that he would not be able to attend. On these occasions, the child went to the DHHS hoping to see his father, but was repeatedly forced to leave without an explanation as to why father failed to attend the scheduled visit. These experiences caused significant emotional trauma for the child, to the point that the child was enrolled in at-home therapy for two one-hour sessions each week. Further, as part of father's service plan, he was ordered to complete a parenting class and provide the DHHS with verification of its completion, but he failed to do so. Based on this evidence, the record supports that he was unwilling or unable to provide the necessary care for the child. Further, this evidence establishes that father failed to comply with his case service plan.

Additionally, the record establishes that the child's placement with his great-grandparents provided the child with structure, permanence, and stability. The child lived with his great-grandparents for most of his life. The child's great-grandparents proved capable of caring for the child during the entire case, and the child was developing appropriately in their care. Further, the child's great-grandparents were considering the possibility of adopting the child. In contrast,

-3-

father largely failed to comply with his case service plan, demonstrating a lack of interest in the child. Therefore, the trial court properly found that the child's current placement offered structure, permanence, and stability that father failed to demonstrate he could provide. Accordingly, the trial court did not clearly err by finding that termination of father's parental rights was in the child's best interests.

On appeal, father's best-interest argument asserts that the trial court erred by finding that father did not comply with numerous aspects of his case service plan. First, father asserts that the trial court erred by not taking into account testimony that father acquired suitable housing for the child prior to the termination hearing. However, contrary to father's assertion, the trial court specifically recognized the testimony that father acquired suitable housing. The trial court noted its confusion as to why father did not contact the DHHS to inform them that he had acquired suitable housing prior to the termination hearing. The trial court found that father's lack of initiative to contact the DHHS showed a lack of interest in the child. Moreover, father's failure to notify the DHHS of his housing in itself supported the trial court's conclusion that father was unwilling to participate in his case service plan.

Father also asserts that the trial court erred by finding that father failed to attend a parenting class. Specifically, father argues that since he believed that his counseling sessions were parenting classes, the trial court should not have found him to not be in compliance with this aspect of his plan. Despite this argument being somewhat factually nonsensical, father's case service plan specifically directed father to provide the DHHS with verification of his completion of a parenting class. Father only attended seven out of eight counseling sessions, and never received discharge papers or any verification that counseling was complete. As such, even had the trial court considered father's attendance at his counseling sessions as attendance at a parenting class, father still failed to complete his counseling sessions, and therefore failed to comply with this aspect of his case service plan.

Lastly, father argues that his failure to attend numerous parenting sessions was due to his financial difficulties related to obtaining reliable transportation and, therefore, should not be used against him. However, uncontested testimony at trial established that father had reliable transportation beginning in November of 2015. Yet from September 11, 2015, until father's visitation rights were suspended on February 9, 2016, father only attended one scheduled parenting session. Therefore, father's argument is erroneous.

We affirm.

/s/ William B. Murphy
/s/ Patrick M. Meter
/s/ Amy Ronayne Krause

-4-