# STATE OF MICHIGAN

# COURT OF APPEALS

RITA KENDZIERSKI, BONNIE HAINES, GREG DENNIS, LOUISE BERTOLINI, JOHN BARKER, JAMES COWAN, VINCENT POWIERSKI, ROBERT STANLEY, ALAN MOROSCHAN, and GAER GUERBER, on Behalf of Themselves and All Others Similarly Situated,

FOR PUBLICATION
April 18, 2017
9:00 a.m.

Plaintiffs-Appellants/Cross-
Appellees,

v

No. 329576
Macomb Circuit Court

MACOMB COUNTY,

LC No. 2010-001380-CK

Defendant-Appellee/Cross-
Appellant.

Before: FORT HOOD, P.J., and JANSEN and HOEKSTRA, JJ.

JANSEN, J.

In this class action, plaintiffs, acting as class representatives, appeal as of right the trial court's opinion and order denying their motion for summary disposition and request for a permanent injunction with regard to defendant's unilateral modification of retiree healthcare benefits. On cross-appeal, defendant challenges the same order, asserting that the trial court's finding that plaintiffs' healthcare retirement benefits were vested or comprised an entitlement to lifetime benefits constituted error. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

This case presents the issue whether defendant was permitted to make unilateral changes to retiree healthcare benefits outlined in several collective bargaining agreements (CBAs). Plaintiffs represent a class of retirees covered under various CBAs with defendant. The parties dispute (1) whether plaintiffs have a vested right to lifetime healthcare benefits, and (2) if so, whether defendant was permitted to make unilateral changes to the healthcare benefits. The trial court concluded that plaintiffs have a vested right to lifetime healthcare benefits. However, the court then concluded that defendant could reasonably modify the scope and level of the benefits. The court, therefore, granted summary disposition in favor of defendant.

-1-

## I. STANDARD OF REVIEW

Plaintiffs moved for summary disposition pursuant to MCR 2.116(C)(10). Defendant moved for summary disposition under MCR 2.116(C)(7), (8), and (10). We review de novo a trial court's ruling on a motion for summary disposition. *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227; 859 NW2d 723 (2014). Because the trial court clearly relied on documents outside of the pleadings, including the CBAs, deposition testimony, and other documentation submitted by the parties, we conclude that summary disposition was granted to defendant under MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012) ("The trial court did not indicate whether it granted defendant's motion pursuant to MCR 2.116(C)(8) or (10); however, because the trial court considered documentary evidence beyond the pleadings, we construe the motion as having been granted pursuant to MCR 2.116(C)(10).").

> A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In reviewing a grant of summary disposition under MCR 2.116(C)(10), this Court considers the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. [*Williams v Enjoi Transp Solutions*, 307 Mich App 182, 185; 858 NW2d 530 (2014) (citations omitted).]

In addition, "A written contract's interpretation is also reviewed de novo." *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009).

> We enforce contracts according to their terms, as a corollary to the parties['] liberty to enter into a contract. We examine contractual language and give the words their plain and ordinary meanings. An unambiguous contractual provision reflects the parties['] intent as a matter of law, and [i]f the language of the contract is unambiguous, we construe and enforce the contract as written. Courts may not create ambiguity when contract language is clear. Rather, this Court must honor the parties' contract, and not rewrite it. [*Id.* at 664-665 (citations and quotation marks omitted; third alteration in original).]

## II. VESTED BENEFITS

Defendant argues that the trial court improperly concluded that plaintiffs are entitled to lifetime healthcare benefits. We disagree.

To determine whether plaintiffs' right to healthcare benefits had vested, we first examine the CBA language at issue in the context of accepted principles of contract interpretation. "Under established contract principles, vested retirement rights may not be altered without the [retiree]'s consent." *Harper Woods Retirees Ass'n v Harper Woods*, 312 Mich App 500, 511; 879 NW2d 897 (2015) (citation and quotation marks omitted; alteration in original). Our Supreme Court in *Arbuckle v Gen Motors, LLC*, 499 Mich 521, 539; 885 NW2d 232 (2016), recently observed that "a union may represent and bargain for already-retired employees, but

only with respect to *non*vested benefits. By contrast, when an employer explicitly obligates itself to provide vested benefits, that promise is rendered forever unalterable without the retiree's consent."

To determine whether the right to the healthcare benefits vested, a plaintiff must establish that "(1) he or she had a contractual right to the claimed benefit that was to continue after the agreement's expiration, and (2) the right was included in his or her respective contract at the time of retirement." *Harper Woods*, 312 Mich App at 511. Before the United States Supreme Court issued its opinion in *M & G Polymers USA, LLC v Tackett*, 574 US ___; 135 S Ct 926; 190 L Ed 2d 809 (2015), a presumption existed in the United States Court of Appeals for the Sixth Circuit that retiree benefits outlined in a CBA are vested lifetime benefits. *Harper Woods Retirees Ass'n*, 312 Mich App at 511-512. In *Tackett*, the United States Supreme Court concluded that this presumption was inconsistent with the traditional rules of contract law. *Tackett*, 574 US at ___; 135 S Ct at 937; 190 L Ed 2d at 821. The Court indicated that ordinarily, a contractual obligation ceases when the CBA terminates. *Id*. at ___; 135 S Ct 937; 190 L Ed 2d at 820. "[W]hen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." *Id*. at ___; 135 S Ct at 937; 190 L Ed 2d at 820. However, the Court clarified that its holding did not preclude a conclusion that the parties intended for the lifetime benefits to vest, so long as ordinary contract principles were used to reach that conclusion. *Id*. at ___; 135 S Ct at 937; 190 L Ed 2d at 820.

> Our Supreme Court expanded upon this idea in *Arbuckle*:
>
> Indeed, basic principles of contract interpretation instruct that courts should not construe ambiguous writings to create lifetime promises and, absent a contrary intent, that contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement. For when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life. [*Arbuckle*, 499 Mich at 540 (citations and quotation marks omitted).]

Accordingly, we examine the traditional rules of contract interpretation to determine whether plaintiffs had the right to lifetime healthcare benefits. As explained in *Arbuckle*:

> Interpretation of a collective-bargaining agreement, like interpretation of any other contract, is . . . a question of law also subject to review de novo. A reviewing court interprets a collective-bargaining agreement according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy. [*Id*. at 531-532 (citations and quotation marks omitted).]

This Court has recently recognized:

> This Court's main goal in the interpretation of contracts is to honor the intent of the parties. The words used in the contract are the best evidence [of] the parties' intent. When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties,

> or to consider extrinsic testimony to determine the parties' intent. [*Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 446; 886 NW2d 445 (2015) (citations and quotation marks omitted).]

However, when a contract contains a latent ambiguity, then extrinsic evidence may be admitted to establish the meaning of the contract. *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). Our Supreme Court has described a latent ambiguity as follows:

> A latent ambiguity . . . is one that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed. Because the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist. [*Id*. at 668 (citation and quotation marks omitted).]

Our Supreme Court has further explained that

> [a] latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings. To verify the existence of a latent ambiguity, a court must examine the extrinsic evidence presented and determine if in fact that evidence supports an argument that the contract language at issue, under the circumstances of its formation, is susceptible to more than one interpretation. Then, if a latent ambiguity is found to exist, a court must examine the extrinsic evidence again to ascertain the meaning of the contract language at issue. [*Id*. (citations and quotation marks omitted).]

We disagree with the trial court's conclusion that the CBAs are unambiguous. Due to the plethora of CBAs existing at various times with different unions, following the method used by the trial court, we have selected exemplars to reflect the language at issue for the periods encompassing: (a) 2000 to 2004, (b) 2005 to 2007, and (c) 2008 to 2010. These CBAs are silent on the issue whether the healthcare benefits vested. Each exemplar CBA states that defendant will provide fully-paid medical benefits. However, the CBAs do not expressly state whether the benefits were promised indefinitely or only for the duration of the CBA.

As noted by plaintiffs in their brief on appeal, other contract language creates a latent ambiguity regarding whether the healthcare benefits are vested. For example, the CBAs contain a "survivor" option permitting continuation of a surviving spouse's health care coverage following the death of the retiree. The fact that this provision contemplates that coverage will continue until, and even after, the death of the retiree indicates that the parties intended that the healthcare coverage would last beyond the three-year term of the individual CBAs. In addition, the CBAs provide that the agreement may be terminated if the retiree fails to enroll in Medicare at age 65. This provision again contemplates that the coverage outlasts the three-year period of the CBA given that a retiree may retire years before turning 65. Furthermore, the CBAs provide that healthcare coverage is suspended while the retiree has coverage through another employer, but then states that coverage through the CBA recommences once the coverage through the other

employer ends. Once again, this contract provision indicates that the parties contemplated that the retirees will receive healthcare benefits far beyond the three-year term of the CBAs. Accordingly, we conclude that the CBAs contain a latent ambiguity with regard to whether the parties intended for the retiree benefits to vest, and the trial court properly examined extrinsic evidence to determine the meaning of the CBAs.

In determining that the healthcare benefits were lifetime benefits, the trial court examined a 2014 bond funding proposal, accompanied by a letter from the Macomb County Executive. We agree with the trial court that this unrefuted evidence established the intent of the parties to provide lifetime healthcare benefits to retirees. The trial court relied on a sentence in the 2014 bond proposal, which read, "The County provides retiree health benefits to eligible County retirees (and their eligible beneficiaries) *for their lifetimes*." (Emphasis added.) The proposal acknowledged that the practice of funding retiree healthcare benefits began 20 years earlier. Additionally, the proposal provided, "*Historically*, Macomb County has offered retiree healthcare to *vested* employees as part of their benefit package." (Emphasis added.)

We conclude that these statements by defendant establish that the healthcare benefits are vested. The first statement expressly provides that the healthcare benefits last for the life of the retiree and the retiree's eligible beneficiaries. The second statement provides that healthcare benefits are granted to employees with vested rights and states that this has been an historical practice of the county. Importantly, the bond proposal outlines defendant's 20-year history of funding the health benefits, suggesting that defendant took this position during the period in which plaintiffs retired and continued to take the same position during the pendency of this case.[1] Accordingly, plaintiffs presented unrefuted evidence establishing that the retiree healthcare benefits are vested.

## III. MODIFICATION OF THE BENEFITS

The next issue is whether the trial court correctly concluded that defendant maintained the ability to modify the healthcare coverage in spite of the fact that the healthcare benefits are vested. We disagree with the trial court's conclusion that defendant could modify the healthcare benefits without plaintiffs' consent.

In *Harper Woods*, this Court clarified that a party to a contract may not unilaterally alter the contract and that when an alteration of a CBA affects a party's vested rights, the change may give rise to a breach of contract action. See *Harper Woods*, 312 Mich App at 508. This Court further rejected the trial court's use of a reasonableness standard to determine whether the defendant properly altered the retirees' healthcare benefits without the consent of the retirees. *Id*. at 508-509. This Court stated, "In Michigan, '[a] mere judicial assessment of "reasonableness" is an invalid basis on which to refuse to enforce contractual provisions.' " *Id*. at 509 (citation omitted; alteration in original). With regard to the trial court's reliance on the "reasonableness"

---

[1] In addition to this dispositive evidence, plaintiffs presented evidence that a human resources representative for defendant informed retirees that the healthcare benefits are lifetime benefits.

standard outlined in *Reese v CNH America, LLC*, 694 F3d 681 (CA 6, 2012), this Court explained that "the trial court was not bound to follow *Reese*." *Id*. This Court further explained,

> *Reese* does not stand for the proposition that an employer may always unilaterally alter its retirees' healthcare benefits under a CBA, regardless of the CBA's specific language, as long as the alterations are reasonable. Rather, the *Reese* court indicated that a retiree's right to health insurance benefits under a CBA could be unilaterally altered if evidence indicated the parties intended to permit such alterations, not because vested health insurance benefits under a CBA are unilaterally alterable as a matter of law. [*Id*. at 510.]

Importantly, this Court then added, "Under established contract principles, vested retirement rights may not be altered without the [retiree]'s consent." *Id*. at 511 (citation and quotation marks omitted; alteration in original).

The exemplar CBAs outline the healthcare benefits provided to retirees. The CBAs describe the healthcare plan provided to the pre-Medicare eligible retirees, but also state that defendant may provide the "substantial equivalence" of the plan. The CBAs explain, "Determination of substantial equivalency, as expressed herein, will be subject to review and agreement by the Parties to this Agreement, prior to implementation of same." The substantial equivalence caveat only appears with regard to the pre-Medicare eligible retiree healthcare coverage, and the CBAs do not contain similar language with regard to prescription coverage, the "over 65 supplemental" coverage for Medicare-eligible retirees, or the alternative HMO plans. Regardless, defendant failed to provide *any* evidence indicating that plaintiffs consented to the alteration in the healthcare benefits. Therefore, we conclude that the trial court erred by determining that defendant may reasonably modify the scope and level of the healthcare benefits without plaintiffs' consent. The trial court erred by granting summary disposition in favor of defendant, and summary disposition in favor of plaintiffs was appropriate. Accordingly, we remand this case to the trial court for entry of an order granting summary disposition in favor of plaintiffs and granting plaintiffs' motion for a permanent injunction in conformance with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Joel P. Hoekstra