*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VELOCITY INVESTMENTS LLC,

        Plaintiff/Counterdefendant-Appellee,

v

RASHARD JONES,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
May 13, 2025
11:03 AM

No. 369122
Oakland Circuit Court
LC No. 2023-198840-CZ

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

N. P. HOOD, J. (*dissenting*).

I respectfully dissent. This case has a statute of frauds problem, which manifests as a standing problem. Plaintiff, Velocity Investments LLC ("Velocity"), would have standing to sue on the basis of a series of assignments of debt that Defendant, Rashard Jones, owes. An agreement for the assignment of a debt is subject to the statute of frauds. See *Burkhardt v Bailey*, 260 Mich App 636, 654; 680 NW2d 453 (2004), citing MCL 566.132(1)(f). In other words, without a written agreement, the assignment of the debt is invalid. See MCL 566.132(1)(f). No party was able to produce the written agreement assigning the debt from Cross River Bank (Cross River) to Upstart Network, Inc. (Upstart), the earliest assignment in the chain of title that supposedly ends with Velocity. Without that document, the assignment to Velocity is invalid, and it does not have standing to sue. For that reason, and those later discussed, I would reverse the grant of summary disposition in Velocity's favor.

## I. BACKGROUND

The majority opinion accurately summarizes the background of this case with one caveat: the record does not contain a written assignment in which Cross River assigned Jones's debt to Upstart.

Jones initially borrowed money from Cross River on October 8, 2018. The promissory note through which Jones agreed to repay Cross River indicates that Cross River—no one else— loaned Jones $45,000. This document is part of the record.

Upstart processed Jones's loan application and serviced the loan after Cross River loaned Jones the money. Upstart was not the original lender. It may have been closely related to Cross River and MPLI Capital Holdings (MPLI), but it was a separate entity and did not own Jones's debt when Jones initially borrowed the money. Throughout the case, Upstart identified itself as the "initial seller and servicer of the loan," but to be clear, it was not the original lender.

This was clarified by the transfer certificate on which Velocity relies, which identifies Cross River as "Transferor" and Upstart as "Transferee." It purports to certify that Cross River "transferred, assigned, and conveyed to [Upstart] and its successors and permitted assigns, all right, title and interest" that Cross River held in Jones's loan. This certification was not an assignment.[1] Rather, it was a statement that the assignment had occurred. The document is dated July 31, 2020, which, as later described, followed the assignment of the debt from Upstart/MPLI to Velocity in January 2020. The assignment itself is not part of the record, although witnesses testified that it exists.

Upstart "on behalf of MPLI" assigned the debt to Velocity through a "Joinder Agreement" dated January 13, 2020. The bill of sale and joinder agreement assigning the debt are part of the record. The text of the document clarifies that the agreement was a transfer of the debt from Upstart to Velocity, with MPLI becoming a party to the agreement.

To simplify and shorten, there were four steps from the original loan to the lawsuit. First, Cross River loaned money to Jones. Second, Cross River assigned Jones's debt to Upstart. Third, Upstart and MPLI assigned the debt to Velocity. Fourth, and finally, Velocity sued Jones in a collection action. According to Velocity, "The various assignment documents reflect that the Jones Loan was sold and assigned from each of the originating entities, including Upstart, Cross River Bank and MPLI Capital Holdings to Velocity." But, as stated, the actual assignment from Cross River to Upstart is not part of the record, just a certification that the assignment had happened.[2]

I otherwise agree with the factual background as stated in the majority opinion. Critically, Velocity moved for summary disposition after filing suit. Jones opposed the motion, arguing that Velocity did not have a valid assignment. The trial court granted summary disposition in

---

[1] Velocity attached this document to its complaint and its motion for summary disposition. The index to Velocity's motion for summary disposition identifies this as a "transfer agreement." That appears to be inaccurate.

[2] I acknowledge that this appears to differ from the majority's understanding of the various assignments. The majority, pointing to the testimony of Deanna Sgro, who oversees licensing and regulatory compliance for Velocity Portfolio Group, describes the assignment as from Cross River to MPLI to Velocity. Based on the documents, I have a different understanding of the facts. But even if this was the sequence of assignments, the same problem would exist with different entities. The document for the original assignment from Cross River (whether to Upstart of MPLI) is not part of the record.

Velocity's favor, finding a clear chain of title. The trial court also dismissed Jones's counterclaim. This appeal followed.

## II. STANDING

Jones's central argument is that Velocity lacked standing to sue in this collection case because of problems with the chain of title that would establish that Velocity actually owns Jones's debt.

"Whether a party has standing is a question of law that is reviewed de novo." *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). We also review de novo legal questions such as the interpretation of statutes. *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 493; 791 NW2d 853 (2010). "When the words used in a statute or an ordinance are clear and unambiguous, they express the intent of the legislative body and must be enforced as written." *Detroit Media Group, LLC v Detroit Bd of Zoning Appeals*, 339 Mich App 38, 51; 981 NW2d 88 (2021). Assignment agreements are considered contracts and must be interpreted as such. See *Burkhardt*, 260 Mich App at 653. "When contractual language is unambiguous, courts must interpret and enforce the language as written because an unambiguous contract reflects, as a matter of law, the parties' intent." *Harper Woods Retirees Ass'n v City of Harper Woods*, 312 Mich App 500, 508; 879 NW2d 897 (2015).

The term "standing" generally refers to "invok[ing] the power of a trial court to adjudicate a claimed injury." *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 583; 983 NW2d 798 (2022) (quotation marks and citation omitted). "[A] litigant has standing whenever there is a legal cause of action." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010).

> Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Id*.]

Here, the question of Velocity's standing is based on its ownership of—and ability to collect—Jones's debt. Its ownership of Jones's debt is evidenced by the chain of title, which is essentially a series of assignments of Jones's debt that purports to begin with the original lender, Cross River, and purports to end with the debt collector, Velocity.

> An assignment is defined as a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or any estate or right therein. To constitute a valid assignment there must be a perfected transaction between the parties which is intended to vest in the assignee a present right in the

-3-

thing assigned. [*Weston v Dowty*, 163 Mich App 238, 242; 414 NW2d 165 (1987) (quotation marks and citation omitted).[3]]

"[A]n assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed." *Prof Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 177; 577 NW2d 909 (1998). A valid assignment does not require particular words. *Burkhardt*, 260 Mich App at 654-655. Instead, the assignor must simply "manifest an intent to transfer and must not retain any control or any power of revocation." *Id.* (quotation marks and citation omitted). And, as stated, there must be an intent to vest a "present right" in the thing assigned. *Weston*, 163 Mich App at 242. So, even a poorly-written document can be an effective assignment. See *Burkhardt*, 260 Mich App at 654.

But an assignment of a debt, such as the assignments at issue in this case, is subject to the statute of frauds. See *id*. "Michigan's version of the statute of frauds [still] requires that an assignment of 'things in action' be 'in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise . . . .' " *Id*., quoting MCL 566.132(1)(f) (relating to an assignment of things in action, whether intended as a transfer for sale, for security, or otherwise). In other words, the assignments related to Jones's debt had to comply with the statute of frauds.

Jones insists that there is insufficient evidence that the entities holding his debt successfully transferred or assigned the debt to Velocity. He points to several alleged defects, two of which I find persuasive: (1) there is no evidence of a writing (let alone a signed writing) showing a transfer of a present interest in Jones's debt from Cross River to Upstart (or MPLI); and (2) even without that writing, there is no evidence that that transfer occurred before Upstart/MPLI's transfer to Velocity. Without that evidence, Velocity cannot establish that it has standing to sue for collection on Jones's debt.

First, there is no document comporting with the statute of frauds, that shows an assignment of a present interest in Jones's debt from Cross River to Upstart. I agree with the majority that we have certain documents. We have documents showing that Cross River originated the loan. We also have documents showing that Jones made some payments. And we have a document showing the assignment from Upstart to Velocity, with MPLI somehow made party to the transaction. But we do not have a document showing a transfer of a *present* interest from Cross River to Upstart. Instead, we have a certification. The certification is dated July 31, 2020, and it states that Cross River assigned its interests in "each loan"[4] at some unspecified date before July 31, 2020. The

---

[3] Although this case is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, see *Wells Fargo Rail Corp v Dep't of Treasury*, 344 Mich App 351, 372 n 3; 1 NW3d 373 (2022), as a published opinion, it is nevertheless binding under the rule of stare decisis. See MCR 7.215(C)(2).

[4] This potentially creates a third problem. The certificate, to the extent that we can rely on it, does not indicate which loans were subject to the assignment. It appears to reference an attachment, but it is unclear whether the attachment is part of the record.

-4-

deposition testimony suggests that the assignment happened years earlier. But this was not an assignment of a present interest. Rather, it was a certification that such an assignment happened at some point. This document does not satisfy the statute of frauds. I am unaware of authority that allows us to rely on it as a placeholder for the actual assignment. Without that assignment, there is a break in Velocity's chain of title, and it would not have standing to sue.

The fact that the certification does not identify the date of the assignment leads me to the second problem with Velocity's chain of title: we do not know if Upstart had an interest to transfer on the date of its assignment to Velocity. As the majority observes, the joinder agreement between Upstart and Velocity was dated January 13, 2020, with Upstart, Velocity, and MPLI signing as parties to the agreement.[5] The bill of sale dated January 28, 2020, established that Velocity purchased the debt for Jones's loan that ended in "7077" from Upstart Network on behalf of MPLI. The effective date of the assignment was January 30, 2020. But what interest did Upstart have in Jones's debt on January 30, 2020? We simply do not know. If we can rely on the Cross River/Upstart certification, then we know that the assignment from Cross River to upstart happened before July 31, 2020. But whether the Cross River-to-Upstart assignment occurred before January 30, 2020, when Upstart purported to assign its interest to Velocity, is largely unknown. Without that knowledge, I cannot agree that Velocity had standing to sue because it is not clear what interest, if any, Upstart had the ability to assign on January 30, 2020.[6]

For these two reasons, I would reverse the trial court's decision related the clear chain of title and Velocity's standing to sue.

### III. SUMMARY DISPOSITION

Next, Jones argues that the trial court erred by granting summary disposition to Velocity because genuine issues of material fact remain. Velocity moved for summary disposition of its

---

[5] The agreement is convoluted. As best as I can understand, the transaction was between Upstart and Velocity. Upstart identified itself as the "initial seller and servicer," which though accurate, is confusing. Upstart was the seller or broker of the loan on which Cross River was the originator or lender. It then serviced the loan for Cross River. Cross River later assigned the loan to Upstart. And through the joinder agreement, Upstart assigned the loan to Velocity with MPLI becoming party to the agreement.

[6] In Part(II)(C) of its opinion, the majority accurately states the longstanding principle that a person who is not a party to an assignment lacks standing to challenge it. See *Davis v M & T Bank*, unpublished per curiam opinion of the Court of Appeals, issued June 7, 2018 (Docket No. 338705), p 2, citing *Bowles v Oakman*, 246 Mich 674, 678; 225 NW 613 (1929). But Jones's standing is not at issue here. Unlike the plaintiff-mortgagor in *Davis*, who disputed his debt obligation and sued to quiet title, Jones defends on the basis of Velocity's broken chain of title. Had Jones sued Velocity to dispute his debt, the principles identified in *Davis* would squarely apply. And if the cases on which the majority relies in Part(II)(C) of its opinion were to be read as barring a defense on the basis of a broken chain of title, then the majority's conclusion would be correct. But I do not read those principles as extending that far.

-5-

claim under MCR 2.116(C)(9) and (C)(10) and of Jones's counterclaim under MCR 2.116(C)(8) and (C)(10). In response to Velocity's motion for summary disposition, Jones moved for summary disposition under MCR 2.116(I)(2).[7]

Although the trial court did not specify the subrule under which it granted summary disposition to Velocity, review is proper under MCR 2.116(C)(10) because resolution of the issues involves consideration of evidence outside the pleadings. *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

We review de novo the trial court's decision to grant summary disposition to Velocity. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *Id*. at 160. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. A genuine issue of material fact exists "when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). In our analysis, all reasonable inferences must be drawn in favor of the nonmoving party. *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010).

Here, the trial court observed that the outcome of Velocity's summary disposition motion turned on whether a clear assignment of the loan occurred. Furthermore, the trial court ruled that the evidence accompanying the pleadings established a clear chain of title and that Jones did not dispute his obligation on the loan. I agree with the majority that Velocity's standing and the merits of the case are inextricably linked: a broken or unbroken chain of title determines both. Put differently, if there is a broken chain of title, Velocity cannot establish that it has authority to bring this case, i.e., standing to sue. And if there is a broken chain of title, Velocity cannot establish that it has authority to collect on Jones's debt, i.e., the merits. As explained, I reach a different conclusion than the majority does regarding the chain of title. There is insufficient evidence to determine whether Velocity had authority to collect the debt. Therefore, I would reverse the trial court order granting summary disposition in favor of Velocity, reinstate Jones's counterclaim, and remand for further proceedings.

I respectfully dissent.

/s/ Noah P. Hood

---

[7] At the threshold, I observe that to the extent Jones moved for summary disposition to challenge standing, Jones should have moved for summary disposition under MCR 2.116(C)(5). (See *UAW v Central Mich University Trustees*, 295 Mich App 486, 494; 815 NW2d 132 (2012) for the general standard; and *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No. 2*, 309 Mich App 611, 619; 873 NW2d 783 (2015), which states, "This Court has viewed a claim that a plaintiff lacks standing as a motion under MCR 2.116(C)(5), i.e., that the plaintiff lacks the legal capacity to sue."). Based on the standing analysis, that motion should have been granted. The result remains the same.