REICHER v SET ENTERPRISES, INC

Docket No. 278907. Submitted August 6, 2008, at Detroit. Decided May 12, 2009, at 9:10 a.m.

Peter L. Reicher brought an action under the sales representatives' commissions act (SRCA), MCL 600.2961, against S.E.T. Enterprises, Inc., in the Wayne Circuit Court, seeking unpaid commissions, penalty damages, and attorney fees. On competing motions for summary disposition, the court, John A. Murphy, J., granted summary disposition for the defendant, ruling that the plaintiff's claims were barred under the terms of a waiver of claims contained in an agreement by which the plaintiff had settled a prior SRCA action against an entity whose liabilities had been assumed by the defendant. The plaintiff appealed.

The Court of Appeals *held*:

1. The waiver of claims in the settlement agreement was not barred by MCL 600.2961(6) of the SRCA. MCL 600.2961(8), which nullifies a provision in a contract between a principal and a sales representative that purports to waive any right under the SRCA, applies to sales representation agreements, not to an agreement by which an action brought under the SRCA is settled.

2. Under the clear terms of the waiver of claims, which must be treated and interpreted as an enforceable contract, the plaintiff waived all claims for commissions, attorney fees, costs, expenses, and additional damages under the SRCA. The settlement agreement also did not include any penalty provision for late payments of amounts due under the settlement agreement.

Affirmed.

STATUTES — SALES REPRESENTATIVES' COMMISSIONS ACT — WAIVER OF RIGHTS — SETTLEMENT AGREEMENTS.

Rights under the sales representatives' commissions act may not be waived in a sales representation agreement; the prohibition does not apply to a waiver contained in an agreement by which an action brought under the act is settled (MCL 600.2961[8]).

*Randall J. Gillary, P.C. (by Randall J. Gillary* and *Kevin P. Albus*), for the plaintiff.

*Law Offices of Richard M. Shulman (by Richard M. Shulman)* for the defendant.

Before: DAVIS, P.J., and BORRELLO and WILDER, JJ.

WILDER, J. Plaintiff appeals as of right the circuit court's order denying his motion for summary disposition, and granting summary disposition to defendant, in this action seeking penalty damages and attorney fees under the Michigan sales representatives' commissions act (SRCA), MCL 600.2961. We affirm.

In or around 1972, according to plaintiff, plaintiff and Jebco Manufacturing, Inc. (Jebco), entered into an oral sales representation agreement. Under this agreement, plaintiff solicited orders for automotive parts manufactured by Jebco. For the orders, Jebco promised to pay sales commissions to plaintiff for the life of the parts. From 1972 through about August 1999, according to plaintiff, plaintiff procured orders for Jebco parts, and Jebco paid plaintiff sales commissions. Throughout that period, according to plaintiff, Jebco would pay the commissions to plaintiff on the 10th or 12th day of each month for the shipments made during the preceding month.

By letter dated August 27, 1999, Jebco informed plaintiff that the sales representation agreement would be terminated, except for the commission obligations assumed by Noble Metal Forming, Inc. (Noble) (an earlier name of defendant), to which Jebco was selling substantially all its assets and business. The letter stated: "As we have discussed, effective as of the close of business August 31, 1999, Jebco will complete the sale of substantially all of its assets and business to Noble

Metal Forming, Inc., a Michigan corporation based in Detroit, Michigan." The letter further stated that Jebco was terminating its sales representation agreement with plaintiff: "Inasmuch as Jebco will no longer be in the automotive supply business after August 31, 1999, please accept this letter as Jebco's notice that, effective as of the close of business on August 31, 1999, the Sales Representation Agreement shall be terminated, except for the obligations assumed by Noble as described" in the letter.

According to the August 27, 1999, letter, Noble agreed to assume Jebco's obligations under the sales representation agreement for products sold before August 31, 1999, for which payment had not been received by Jebco by the closing date. The letter stated:

> As part of the sale, Noble has agree[d] to the following:
>
> • [To] Assume the obligations of Jebco arising under the Sales Representation Agreement with respect to commissions due for products sold prior to August 31, 1999 for which payment has not been received by the Company from the ultimate customer as of the Closing Date.

Noble also agreed, according to Jebco's letter, to assume certain other obligations of Jebco arising under the sales representation agreement:

> As part of the sale, Noble has agree[d] to the following:
>
> * * *
>
> • [To] Assume the obligations of Jebco arising under the Sales Representation Agreement with respect to commissions relative to (i) products sold after August 31, 1999 on contracts that existed on August 31, 1999 as required by the "life of part" or other commission continuation provisions under the Sales Representation Agreement, and (ii) business generated for the benefit of Noble after August 31, 1999 as a result of the efforts of you prior to August 31,

1999 which can be reasonably evidenced by you (e.g., the DaimlerChrysler RS 2001 Program).

Effective August 31, 1999, Jebco sold substantially all its assets and its business to Noble.

According to plaintiff, in February 2000, Noble terminated the sales representation relationship with him and indicated it did not intend to fulfill its obligation to pay life-of-the-part sales commissions to him. As a result, in March 2000, plaintiff commenced an action in the Macomb Circuit Court. In resolving that action, in February 2001, plaintiff and Noble entered into a written settlement agreement. Noble agreed to pay commissions to plaintiff for parts listed in an exhibit to the agreement, which payments would include not only the parts listed, but any modifications or changes to the parts. Noble agreed to pay commissions for parts shipped through June 1, 2000, at the rate of 3 percent, and 3 or 2 percent for parts shipped commencing on June 1, 2000, through May 31, 2005, as listed in the agreement. Plaintiff agreed to dismiss the action.

The settlement agreement also contained a mutual release:

> **3. Mutual Release of All Claims**. For valuable consideration, receipt of which is hereby acknowledged, both NOBLE and REICHER mutually hereby agree to release, acquit, and forever discharge the other including all agents, representatives, employees, insurers, attorneys, and indemnitors *of and from any and all claims which either may have against the other, except those arising out of this Settlement Agreement and Mutual Release, which arose out of and/or during the course of the employment relationship* between PETER L. REICHER and JEBCO MANUFAC-TURING, INC. and the employment relationship, if any, between PETER L. REICHER and NOBLE METAL FORMING, INC. as well as any affiliated entity. *This includes, without limitation, claims for commissions, attor-*

*ney fees, costs, expenses, additional damages under the Michigan Sales Commission Act, and any other claims for commissions or compensation of any kind.* [Emphasis added.]

About May 2001, Noble changed its corporate name to S.E.T. Metal Forming, Inc. In July 2001, S.E.T. Metal Forming, Inc., merged into S.E.T. Steel, Inc. In September 2001, S.E.T. Steel, Inc., changed its name to S.E.T. Enterprises, Inc.

According to plaintiff, during these changes in defendant's corporate entity and name, defendant continued to pay sales commissions in accordance with the settlement agreement. According to defendant's response to plaintiff's requests for admissions, sometime in February 2004, defendant began making its commission payments late, and from February 2004 through August 2005, defendant made approximately 11 payments to plaintiff that were more than 45 days late when they were paid. Defendant argues that by August 2005, it had satisfied all payments under the settlement agreement.

As a result of the late payments, plaintiff commenced this action, seeking penalty damages and attorney fees under the SRCA. Plaintiff made a list of the late payments and attached it to requests for admissions, and defendant admitted that the list was accurate.

Later, plaintiff filed a motion for summary disposition under MCR 2.116(C)(10), arguing that defendant admitted that it failed to make commission payments within the time limits prescribed by the SRCA and that defendant failed to produce any evidence that its failure to make timely payments was a result of mistake or inadvertence. In its response to the motion, defendant argued that plaintiff's claim was barred by the release in the settlement agreement. In his reply brief, plaintiff

argued that the release only applied to claims arising before the execution of the settlement agreement and that the release excluded claims arising under the settlement agreement. Plaintiff also argued that, under the SRCA, any attempts to waive the provisions of the SRCA are void. The circuit court agreed with defendant, denied plaintiff's motion, and granted summary disposition to defendant.

We first examine whether the SRCA provision prohibiting waiver of any right under the SRCA voids the release involved herein. We hold that it does not.

Well-established principles guide this Court's statutory construction efforts; we begin by consulting the specific statutory language at issue. *Provider Creditors Comm v United American Health Care Corp*, 275 Mich App 90, 95; 738 NW2d 770 (2007). "This Court gives effect to the Legislature's intent as expressed in the statute's terms, giving the words of the statute their plain and ordinary meaning." *McManamon v Redford Charter Twp*, 273 Mich App 131, 135; 730 NW2d 757 (2006). "When the language poses no ambiguity, this Court need not look outside the statute, nor construe the statute, but need only enforce the statute as written." *Id.* at 136.

The SRCA establishes due dates for the payment of commissions to terminated sales representatives and imposes penalties on principals who intentionally fail to pay commissions by the due dates. MCL 600.2961(4) provides: "All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due." MCL 600.2961(2) provides: "The terms of the contract

between the principal and sales representative shall determine when a commission becomes due." MCL 600.2961(3) provides:

> If the time when the commission is due cannot be determined by a contract between the principal and sales representative, the past practices between the parties shall control or, if there are no past practices, the custom and usage prevalent in this state for the business that is the subject of the relationship between the parties.

Under MCL 600.2961(5), if a principal fails to pay commissions on time, it is liable to the sales representative for (1) actual damages caused by the failure to pay on time and (2) twice the amount of the commissions due or $100,000, whichever is less, if the principal is found to have intentionally failed to pay the commissions when due. When a sales representative brings an action under the SRCA, the court "shall award to the prevailing party reasonable attorney fees and court costs." MCL 600.2961(6). Finally, the SRCA provides that "[a] provision in a contract between a principal and a sales representative purporting to waive any right under this section is void." MCL 600.2961(8).

By its plain language, this prohibition against waiving rights under the SRCA applies only to a contract between a principal and a sales representative. We conclude, therefore, that by its clear intent and import, the SRCA prohibition applies only to waivers contained in sales representation contracts.

In the present case, the release or waiver is contained, not in a sales representation contract, but rather in a settlement agreement. An agreement to settle a pending lawsuit is a contract, governed by the legal rules applicable to the construction and interpretation of other contracts. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

Moreover, by definition, a settlement agreement is a compromise of a disputed claim. *Hoffman v Burkhammer*, 373 Mich 187, 195; 128 NW2d 503 (1964) ("[T]he April 12 agreement was a compromise settlement of a disputed claim, that is, it was an executory accord."). Given the discrete differences between a settlement agreement and a sales representation agreement, we conclude that plaintiff's settlement with Noble falls outside the scope of the SRCA.

Since the SRCA does not as a matter of law void the waiver of a claim to penalty damages and attorney fees pursuant to a settlement agreement resolving litigation, we next examine whether the release at issue bars plaintiff's claims under the SRCA. We conclude that it does.

Summary dispositions are reviewed de novo. *Willett v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006). A written contract's interpretation is also reviewed de novo. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007). The interpretation of a statute is a question of law that is reviewed de novo. *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 55; 744 NW2d 174 (2007).

Michigan courts enforce contracts. *Coates*, *supra* at 503-504. We enforce contracts according to their terms, as a corollary to the parties liberty to enter into a contract. *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). We examine contractual language and give the words their plain and ordinary meanings. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). An unambiguous contractual provision reflects the parties intent as a matter of law, and "[i]f the language of the contract is unambiguous, we construe and enforce the contract as written." *Quality*

*Products & Concepts Co v Nagel Precision, Inc,* 469 Mich 362, 375; 666 NW2d 251 (2003). Courts may not create ambiguity when contract language is clear. *Grosse Pointe Park v Michigan Muni Liability & Prop Pool,* 473 Mich 188, 198; 702 NW2d 106 (2005). Rather, this Court must honor the parties' contract, and not rewrite it. *McDonald v Farm Bureau Ins Co,* 480 Mich 191, 197; 747 NW2d 811 (2008); see also *Coates, supra* at 511 n 7.

Pursuant to the settlement agreement, plaintiff and Noble resolved by compromise the claims and defenses asserted in the previous litigation. Noble agreed to make commission payments for parts shipped up to May 31, 2005, in exchange for plaintiff's agreement to forgo any other potential claims, including penalty damages for late payments under the SRCA. We conclude that, under the circumstances of this case, the SCRA does not prohibit the compromise agreed to by the parties. Plaintiff could have continued the litigation and may have recovered a judgment in full, but he also could have lost the prior litigation and recovered nothing, on the basis that the shipment of parts at issue was not included within the liabilities that Noble assumed when it succeeded Jebco. A settlement agreement is a binding contract. *MacInnes v MacInnes,* 260 Mich App 280, 289; 677 NW2d 889 (2004) (judgments entered pursuant to the agreement of the parties are in the nature of a contract rather than a judicial order entered against one party; a settlement agreement is a contract and must be construed and applied as such). Nothing in the settlement agreement provides any penalty for making late payments. Accordingly, the release bars the claims under the SRCA.

Because we hold that the trial court correctly granted summary disposition to defendant, plaintiff's assertion

that the trial court erred by denying his motion for summary disposition is moot. *In re Duane V Baldwin Trust*, 274 Mich App 387, 404; 733 NW2d 419 (2007). Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

Affirmed.