*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHAPEAU VERT, INC., and GORDON H. LEE,

Plaintiffs-Appellants,

v

TELEGRAPH BISTRO, LLC, and 16650
TELEGRAPH ROAD, LLC,

Defendants-Appellees.

UNPUBLISHED
May 25, 2023

No. 358350
Wayne Circuit Court
LC No. 20-003636-CB

Before: RICK, P.J., and SHAPIRO and O'BRIEN, JJ.

PER CURIAM.

Plaintiffs, Chapeau Vert, Inc., and Gordon H. Lee, appeal as of right the stipulated order granting summary disposition to defendants, Telegraph Bistro, LLC, and 16650 Telegraph Road, LLC, under MCR 2.116(C)(10) (no genuine issue of material fact).[1] We reverse and remand for further proceedings.

## I. BACKGROUND

In November 2018, the parties entered into an agreement for the sale of plaintiffs' business and property to defendants. The sale was governed by a land contract, a promissory note, and a security agreement. Under the terms of the land contract, plaintiff Chapeau Vert agreed to sell its business interest and assets to defendant Telegraph Bistro for a purchase price of $160,000, plus a $2,500 down payment, for a total price of $162,500. The land contract stated that defendants were obligated to make $1,000 payments each month until the full balance was paid off. However, the contract also contained a provision indicating that defendants could alternatively satisfy their obligation under the land contract in full at any time by paying plaintiffs a lump sum equal to 50% of the remaining balance due on the land contract. If defendants defaulted and failed to cure the default within 90 days of receiving notice of forfeiture, plaintiffs were entitled to accelerate the

---

[1] When referenced jointly, the parties will be identified as plaintiffs or defendants. When appropriate, each party will be identified by name.

debt and demand payment of the entire remaining balance. The land contract further stated that defendants were entitled to written notice of any claims of forfeiture before proceedings to recover possession of the land could move forward. Along with the land contract, the parties also entered into a noncompete agreement, under which plaintiff Gordon Lee agreed not to engage in any similar business within a five-mile radius of defendants' property for a period of five years in exchange for consideration of $50,000, due at closing.

On July 18, 2019, plaintiffs filed a notice of forfeiture, claiming that defendants were in default for failing to make monthly payments between April 2019 and July 2019. Plaintiffs sought $4,000 in principal and interest plus $400 in late fees. The notice stated that the default had to be cured within 90 days of service of the notice, and that the land contract would be forfeited if the balance remained unpaid. On July 30, 2019, defendants sent a check to plaintiffs for $4,500. On August 22, 2019, defendants sent another check for $46.65. On September 16, 2019, defendants sent two checks to plaintiffs, one for $5,000 and the other for $17,000. Thus, between July 2019 and September 2019, defendants paid plaintiffs a total of $26,546.65. It is undisputed that defendants cured the default arising from the July 2019 notice of forfeiture.

On October 22, 2019, plaintiffs filed a second forfeiture notice, claiming that defendants were in default for missing payments in September 2019 and October 2019. Plaintiffs sought $2,000 in principal and interest, plus $700 in late fees. In December 2019, defendants sent two checks to plaintiffs totaling $9,800, each dated December 19, 2019. Both checks stated that they were executed as "partial pay for noncompete." Plaintiffs applied both payments to the balance on the noncompete agreement. Notably, there is no evidence in the record that plaintiffs applied any of the funds from December 2019 to cure the October 2019 default.

In March 2020, plaintiffs filed a complaint asserting that defendants committed breach of contract and land contract forfeiture for failure to comply with the October 2019 notice of forfeiture. Plaintiffs further argued that defendants were in default for failure to make monthly payments between September 2019 and February 2020. In response, defendants generally denied plaintiffs' allegations, and pointed out that they never received notice of a forfeiture action arising out of the alleged late payments from September 2019 through February 2020. Defendants also stated that they believed they had made timely payments to cure the default arising from the October 2019 notice of forfeiture, and alleged that plaintiffs were manipulating the payments to manufacture a breach and default.

Defendants moved for summary disposition under MCR 2.116(C)(8) and asked for a declaratory judgment under MCR 2.605. Defendants asserted that the land contract, security agreement, and promissory note all permitted defendants to pay off the balance owed to plaintiffs at any time and receive a 50% discount on the balance regardless of whether defendants were in default. Defendants requested that the trial court enter an order calculating the 50% discount at $151,256, granting plaintiffs an additional $3,800 in late fees, and awarding defendants $8,500 in attorney fees.

In response, plaintiffs argued that defendants were not entitled to the 50% discount because the land contract expressly stated that plaintiffs had the right to declare the contract forfeited and accelerate payment of the entire amount owed once defendants defaulted on the contract. Plaintiffs further contended that because a default under the land contract constituted a default under both

the security agreement and the promissory note, defendants were precluded from paying the balance at a discount under the security agreement and promissory note as well.

At a hearing on the motion, the trial court determined that $162,500 was owed under the land contract, and $145,000 was owed under the promissory note, for a total balance owed of $307,500. The trial court also listed the payments made by defendants, determining that they had already paid a total of $34,300 to plaintiffs. In reviewing the terms of the land contract, the trial court found that in order to commence forfeiture proceedings, defendants had to be in default for more than 90 days after written notice was given. However, the trial court found that any default arising out of the July 2019 and October 2019 notices of forfeiture had been cured because defendants made payments within 90 days of receiving each notice.

Regarding the default that occurred between September 2019 and February 2020, the trial court found that defendants could not be in default unless plaintiffs sent a notice of forfeiture before initiating forfeiture proceedings. It ruled that the complaint filed in March 2020 did not constitute proper notice of forfeiture. Finally, the trial court opined that the clear and unambiguous language of the contracts did not preclude defendants from exercising the option to pay off the remaining balances in a discounted lump sum. The trial court ultimately entered an order granting defendants' motion for summary disposition under MCR 2.116(C)(10), holding that the total balance owed by defendants to plaintiffs was $302,512, but that defendants were entitled to the 50% discount for lump-sum payments and thus owed only $151,256. The trial court further agreed with plaintiffs that they were owed $3,800 in late fees, bringing the total owed by defendants to $155,056. The trial court ordered defendants to pay the amount owed within seven days of the entry of the order, and that in exchange, plaintiffs would stipulate and agree to waive their right to file a motion for reconsideration or subsequent appeal once they cashed defendants' check.

Following the entry of the order, plaintiffs declined to cash defendants' check and instead moved for reconsideration. Plaintiffs claimed that the plain, unambiguous language of the land contract, security agreement, and promissory note entitled them to full payment of the remaining balance and barred defendants from any discount under the terms of the contract. The trial court denied plaintiffs' motion for reconsideration, finding that no palpable error occurred in the court's initial ruling. This appeal followed.

## II. ANALYSIS

Plaintiffs argue that the trial court erred in granting defendants' motion for summary disposition because defendants defaulted under the terms of the contract and were not entitled to a discounted purchase price. We agree that defendants defaulted on the land contract in October 2019 and failed to cure the default. Further, we find that summary disposition was improper because a question of fact exists as to the correct interpretation of the documents governing the sale of the property.

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Plaintiffs claim the trial court erred in granting defendants summary disposition under MCR 2.116(C)(8), but the trial court indicated that it granted defendants' motion under MCR 2.116(C)(10). We will

therefore analyze defendants' argument under MCR 2.116(C)(10). *El-Khalil*, 504 Mich at 159. Motions brought under MCR 2.116(C)(10)

> test[] the *factual sufficiency* of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*Id*. at 160 (quotation marks and citations omitted).]

The proper interpretation of a contract, as well as whether a contract is ambiguous, are questions of law that are also reviewed de novo. *Able Demolition, Inc v City of Pontiac*, 275 Mich App 577, 581; 739 NW2d 696 (2007). Finally, "[w]e review the trial court's factual findings for clear error, and its legal conclusions de novo." *New Prods Corp v Harbor Shores BHBT Land Dev*, LLC, 331 Mich App 614, 624; 953 NW2d 476 (2019) (citations omitted).

We first turn to defendants' failure to cure the default arising from the October 2019 notice of forfeiture. At the hearing on defendants' motion for summary disposition, the trial court found that defendants sent two checks to plaintiffs in December 2019, totaling $9,800. There is no dispute that this amount was well over the $2,700 in past-due payments and late fees defendants owed at that time. Specifically, the court stated:

> [Y]ou guys filed [a] notice of forfeiture on October 22nd and that one says only $2,000 was past due so, and you said only for the payment September and October. So that's $2,000, but then they paid [$]5200 on December 19th and $4600 on December 19th.
>
> So that default was cured as well and I don't think your client can throw on, we'll talk about that in a second, but the non-compete payment, because the non-compete, this doesn't have anything to do with the non-compete payment, that's a completely separate payment than the payments for the, on the Land Contract.

The two checks were issued on December 19, 2019, within the 90-day grace period for curing the October default. However, the memorandum line on both checks states that they were to be used as "partial pay for noncompete," a detail that the trial court overlooked. Plaintiffs have explained, both below and on appeal, that the December 2019 checks were applied against the noncompete agreement, and were never used to cure the October 2019 default. Since defendants indicated the December 2019 checks were to be applied against the balance owed on the noncompete agreement, and there is no other evidence of payments made to cure the October 2019 default, we conclude that defendants did not properly cure the default during the 90-day default grace period that followed the October 2019 notice of forfeiture.[2]

---

[2] Defendants have consistently maintained that plaintiffs manufactured the default on the land contract by intentionally failing to apply payments to the land contract. The memorandum line on

However, plaintiffs' claim can only succeed here if the documents governing the sale of the property preclude defendants from exercising the option to purchase the property for a discounted lump sum after the 90-day default period expires. On this matter, we find that the contract contains an irreconcilable ambiguity that must be resolved by a jury. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 480; 663 NW2d 447 (2003). Although the contract indicates that defendants may exercise the option to purchase the property at a 50% discount "at any time," it is unclear whether the option to purchase "at any time" extends past the 90-day default grace period. This is a critical question, given defendants' failure to cure the October 2019 default.

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties; to this rule all others are subordinate." *Highfield Beach at Lake Michigan v Sanderson*, 331 Mich App 636, 654; 954 NW2d 231 (2020) (quotation marks, alterations, and citation omitted). Words in a contract are given "their plain and ordinary meanings." *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009). Courts must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp*, 468 Mich at 468. Generally, courts must also "construe and apply unambiguous contract provisions as written." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). "A contract is ambiguous if its provisions may reasonably be understood in different ways." *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001).

The sale of the property in this matter was governed by a land contract, a promissory note, and a security agreement. Regarding the lump-sum purchase of the property, the land contract states:

> Buyer, may, *at any time*, provide a lump sum payment to satisfy his obligations under this Land Contract by providing Seller with a payment equal to fifty percent of the remaining balance of the Land Contract, which would render this Land Contract paid in full . . . . Payments not made by the date required herein shall accrue a late charge of $100.00 for each late payment.

> \* \* \*

> That should Buyer default in performance of any of its covenants, or breach any term or provision of this Contract, and such default or breach continues for

---

the December 2019 checks belies this argument. Further, it bears noting that despite asserting that they made several attempts to exercise the lump-sum purchase option, defendants have failed to present proof that they attempted to obtain a discounted buyout price at any point prior to the initiation of plaintiffs' lawsuit in March 2020. The record contains a single e-mail exchange regarding a buyout price, dated July 16, 2020. Were defendants able to present evidence that they attempted to buy the property at discount during the 90-day default grace period, and that plaintiffs refused to sell the property, defendants could potentially show that plaintiffs did in fact manipulate the application of defendants' payments on the land contract to manufacture a default in an effort to reclaim the property. However, on the record before us, the notion that plaintiffs manufactured a default is little more than conjecture.

ninety (90) days after the giving of the notice of forfeiture in writing, Seller shall have the right to declare this contract *forfeited and void*, and retain whatever may have been paid hereon, and all improvements that may have been made upon the land, together with additions and accretions thereto, and consider and treat Buyer as its tenant holding over without permission and may take immediate possession of the land pursuant to judicial process, and have Buyer and each and every other occupant removed and put out. A proper notice of forfeiture, giving Buyer at least ninety (90) days to pay any moneys required to be paid hereunder or to cure other material breaches of this contract, shall be served on Buyer, as provided by statute, prior to institution of any proceedings to recover possession of the land . . . .

That Seller, at its option after Buyer shall have defaulted or breached any covenant, term or provision of this Contract, may accelerate all unpaid principal; and the entire amount owing herein, including accrued interest, shall be due and payable forthwith, anything herein contained to the contrary notwithstanding. Seller may thereafter pursue all remedies permitted by law or in equity, including but not limited to foreclosure. [Emphasis added.]

The land contract indicates that defendants may choose to pay off the balance on the property at a 50% discount "at any time[.]" However, the key word at issue—"any"—is not defined in the land contract or any of the other documentation concerning the sale of the land. Since this is so, we may consult a dictionary to determine the meaning of the word "any." *Andrusz v Andrusz*, 320 Mich App 445, 454; 904 NW2d 636 (2017). *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "any" as "one or some indiscriminately of whatever kind;" or alternatively, "unmeasured or unlimited in amount, number, or extent." Thus, the plain, ordinary meaning of the word suggests that defendants truly can exercise the lump-sum discount option at *any* time.

However, "contractual terms must be construed in context and read in light of the contract as a whole[.]" *Auto Owners Ins Co v Seils*, 310 Mich App 132, 148; 871 NW2d 530 (2015) (citations omitted). When the phrase "at any time" is read in context, it becomes less clear that the parties actually intended for defendants to be able to purchase the property via lump-sum payment at *any* time. Although the land contract does not expressly preclude defendants from purchasing the property via a discounted lump sum during the 90-day default grace period, it states that plaintiffs may declare the entire contract "forfeited and void" once the grace period expires. This conflicts with the notion that defendants may exercise the lump-sum option "at any time," and instead suggests that the option to purchase the property at a discount expires at the end of the 90-day default grace period. The land contract states that at the end of the grace period, plaintiffs "may thereafter pursue all remedies permitted by law or in equity, including but not limited to foreclosure." Thus, while the land contract allows for the purchase of the property via lump sum during the 90-day default grace period, it is unclear whether the parties intended for the phrase "at any time" to persist after the grace period expires.

The promissory note similarly states:

Buyer, may, *at any time*, provide a lump sum payment to satisfy his obligations under this Land Contract by providing Seller with a payment equal to fifty percent

of the remaining balance of the Land Contract, which would render this Land Contract paid in full . . . .

* * *

> In the event of default in carrying out the terms and conditions of this Note, a default under the terms of a Lease between the Debtor and Gordon H. Lee or in event of default under the Security Agreement securing this Note, then the entire remaining balance may at the election of the Note Holder become immediately due and payable if the default is not cured within 90 days after written notice to Debtor, if such default is non-monetary in nature, and 90 days if the default is for failing to pay amounts due under this Note. [Emphasis added.]

Like the land contract, the promissory note allows defendants to exercise the option to purchase the property at a discount "at any time," but also notes that if defendants remain in default for more than 90 days, "the *entire* remaining balance" comes due (emphasis added). Given that the promissory note states that the property may be purchased via lump sum "at any time," but also that the "entire remaining balance" is due and owing after the 90-day grace period expires, it remains unclear whether the parties intended for defendants to be permitted to purchase the property at a discount after the 90-day default grace period expires.

In line with the land contract and the promissory note, the security agreement states, in relevant part:

> It is further agreed that if the Debtor shall pay or cause to be paid to the Secured Party the sum of One Hundred Sixty Thousand Dollars ($160,000), according to a Promissory Note, with the option to execute a lump sum early payout equal to fifty percent of the remaining balance of the Land Contract to satisfy all remaining obligations of the Debtor; if executed by the Debtor to the Secured Party, to which this Security Agreement is collateral security, then this Security Agreement and said Promissory Note shall be void and of no effect as the payment would be made in full and the Land Contract would be fulfilled. Further, Debtor agrees to pay the same accordingly.

> A default by 16550 Telegraph Road, LLC in any of the terms of its Land Contract with Gordon H. Lee for the land and building shall be considered a default in the terms of this Security Agreement, if not cured within the 90 day grace period provided in the Land Contract.

> *Upon default in any of the terms and conditions hereof, the whole amount unpaid on said Note shall thereupon become due and payable* . . . . [Emphasis added.]

Although this document does not contain the "at any time" phrasing that is present in the land contract and promissory note, it does state that if a default is not cured, the "whole amount unpaid" comes due, which once again suggests that the lump-sum discount option may expire if defendants fail to cure a default within 90 days.

"If two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous." *Klapp*, 468 Mich at 480. Here, the contract could be interpreted to mean that defendants may purchase the property for a discounted lump-sum payment at any time, including after the 90-day grace period expires. It could alternatively be interpreted to mean that the right to purchase the property at a discount expires at the end of the default grace period, at which point the entire contract is void and plaintiffs have the right to demand repayment of the entire balance owed. It is unclear how the parties intended for the contract to be interpreted. Where, as here, a contractual ambiguity exists that cannot be resolved absent the use of extrinsic evidence, the parties' intent becomes a question of fact for a jury to decide. *Id*. at 480-481. Thus, under these circumstances, we conclude that the trial court erred by granting summary disposition to defendants pursuant to MCR 2.116(C)(10), and that a jury must establish the correct interpretation of the contract.

## III. CONCLUSION

Defendants failed to cure the October 2019 default within 90 days. However, plaintiffs may only prevail if the contract precludes defendants from purchasing the property via a lump-sum payment after the 90-day default grace period expires. Because a question of fact exists regarding the meaning of the phrase "at any time" in the documents governing the sale of the property, we conclude that summary disposition was not properly granted under MCR 2.116(C)(10).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Colleen A. O'Brien