*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAPLE MANOR NEURO CENTER, INC, and
MAPLE MANOR REHAB CENTER OF NOVI,
INC.,

        Plaintiffs/Intervening Plaintiffs-
        Appellants,

v

FARMERS INSURANCE COMPANY, FARMERS
INSURANCE EXCHANGE, FARMERS
INSURANCE GROUP INC., and BLUE CROSS
BLUE SHIELD OF MICHIGAN,

        Defendants,

and

MID-CENTURY INSURANCE COMPANY,

        Defendant/Cross-Defendant,

and

RONALD ELKIN,

        Defendant/Cross-Plaintiff-Appellee.

UNPUBLISHED
September 24, 2024
10:22 AM

No. 366264
Oakland Circuit Court
LC No. 2018-164787-NF

Before: LETICA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

       In this action arising under the no-fault act, MCL 500.3101 *et seq.*, plaintiffs, Maple Manor Neuro Center, Inc. and Maple Manor Rehab Center of Novi, Inc. (collectively "Maple Manor"),

appeal by delayed appeal granted[1] the trial court's February 8, 2023 order apportioning attorney fees resulting from a settlement agreement in this case between the attorneys for Maple Manor and the attorney for defendant/cross-plaintiff, Ronald Elkin ("Elkin").[2]  On appeal, Maple Manor argues that the trial court erred when it awarded attorney fees to Elkin's attorney from funds that were set aside under the settlement agreement for later apportionment between the attorneys for Maple Manor and Elkin, and the trial court should have awarded the full amount of attorney fees to Maple Manor's attorneys.  We affirm.

Maple Manor provided in-patient rehabilitation services to Elkin beginning on March 15, 2017, which resulted from injuries Elkin suffered in a 1985 motor vehicle accident.  The admissions agreement between Maple Manor and Elkin required that Elkin pay all fees for services rendered that were not covered by an insurer.  Mid-Century Insurance Company ("Mid-Century") was Elkin's no-fault insurer.  Elkin did not assign to Maple Manor the rights to his claim for no-fault benefits from Mid-Century.  Maple Manor waited about a year before beginning to seek payment from Mid-Century.  Elkin's attorney, John Stevenson ("Stevenson"), was already representing Elkin in a claim for no-fault benefits in a case separate from this one.  Both Maple Manor's attorneys and Stevenson demanded payment from Mid-Century, which initially only agreed to issue payment to Maple Manor for services provided in 2017.

In early 2018, Maple Manor filed a claim for no-fault benefits against Mid-Century and a claim for breach of contract against Elkin.  Elkin filed a cross-claim against Mid-Century for payment of no-fault benefits.  The trial court dismissed Maple Manor's claim against Mid-Century because Maple Manor lacked standing to bring a claim for no-fault benefits against an insurer without an assignment of the insured's rights.  The benefits in this case became due after the Supreme Court decided in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 218; 895 NW2d 490 (2017), that a medical provider cannot maintain a cause of action for no-fault benefits against an insurer without an assignment of rights to the claim from the insured.[3]

Nevertheless, Mid-Century agreed to make payments to Maple Manor for about three months, totaling $123,186.81.  One-third of that amount was held in an Interest on Lawyer's Trust Account (IOLTA) for later apportionment of attorney fees between Maple Manor's attorneys and Stevenson.  Disputes continued to arise between the parties and their attorneys regarding the

---

[1] *Maple Manor Neuro Ctr, Inc v Farmers Ins Co*, unpublished order of the Court of Appeals, entered October 19, 2023 (Docket No. 366264).

[2] Farmers Insurance Company, Farmers Insurance Exchange, Farmers Insurance Group, Inc., Mid-Century Insurance Company, and Blue Cross Blue Shield of Michigan are not parties to this appeal.

[3] The Legislature later amended the no-fault act to provide a cause of action to medical providers when it passed MCL 500.3112, as amended by 2019 PA 21.  However, the amendment only applied prospectively.  *Spine Specialists of Mich, PC v MemberSelect Ins Co*, 345 Mich App 405, 411; 5 NW3d 108 (2022), lv pending 513 Mich 904 (2023).

payment of benefits and, particularly relevant here, the payment of attorney fees, and how the payments from Mid-Century were to be apportioned.

A few months later, the trial court granted Maple Manor leave to intervene in Elkin's claim against Mid-Century. The next day, the parties reached a trilateral settlement agreement under which Maple Manor received $275,000, minus one-third of that amount for attorney fees, and all claims were released against all parties. Under the settlement agreement, the attorney fees[4] were placed in an IOLTA account to be apportioned between Maple Manor's attorneys and Stevenson by either mutual agreement of the attorneys, arbitration, or court order. The parties were unable to arrive at an agreement.

In August 2019, Elkin moved to apportion the attorney fees. Elkin argued that Stevenson was entitled to all the attorney fees in this case because only Elkin had a cause of action against Mid-Century and Maple Manor's attorneys had no contingency-fee agreement with Elkin. Maple Manor filed a response to Elkin's motion to apportion attorney fees arguing that (1) it had never agreed to pay Stevenson attorney fees derived from payments made by Mid-Century and recovered by Maple Manor, (2) Elkin was not a part of the settlement between Maple Manor and Mid-Century, (3) Stevenson was not allowed to collect attorney fees as a matter of law because Maple Manor retained its own counsel to represent its interests in this case, (4) the legal bills submitted by Stevenson to the court only concerned services for defending the claim brought by Maple Manor, not services to collect from Mid-Century, (5) Maple Manor's attorneys negotiated the settlement with Mid-Century, and (6) Stevenson's claimed fees were unreasonable. Following a hearing, the trial court took the issue of apportioning attorney fees under advisement pending this Court's decision in *Univ of Mich Regents v Valentino*, unpublished per curiam opinion of the Court of Appeals, issued December 29, 2020 (Docket No. 349942), lv den 508 Mich 925 (2021).

Meanwhile, in April 2021, Elkin filed a supplemental brief in support of his motion to apportion attorney fees following this Court's decision in *Valentino*, unpub op at 12. Elkin argued that the decision reaffirmed previous holdings that no-fault benefit recoveries belong to the insureds, and Elkin, therefore, was entitled to all attorney fees under the facts in this case. Maple Manor filed a response to Elkin's supplemental brief. Maple Manor argued that Stevenson could not claim a valid charging lien because Elkin's involvement in the case was not necessary and should have been avoided by an assignment of Elkin's rights to his no-fault benefits claim to Maple Manor. Maple Manor further argued that, under the circumstances, the American rule for attorney fees applied and Elkin was responsible for paying Stevenson and that Maple Manor agreed to settle its claim against Mid-Century, but never agreed to pay attorney fees to Stevenson because Maple Manor was represented by its own attorneys.

Thereafter, in June 2022, Maple Manor moved to have all the attorney fees held in escrow released and paid to Maple Manor's attorneys. repeating the same arguments that it had made in its previous filings. Similarly, Elkin filed a brief in opposition to Maple Manor's motion to release the escrow funds and reiterated its previous arguments.

---

[4] That amount included $41,062.27 from the payments Mid-Century made to Maple Manor from August to November 2018 and the $91,667 from the settlement agreement.

-3-

In the fullness of time and after a failed attempt to have the parties resolve the dispute through facilitation, the trial court waived oral argument and issued an opinion and order apportioning attorney fees between Maple Manor's attorneys and Stevenson. Given the time passed in February 2023, the trial court awarded Stevenson $3,799.25 for costs. After those costs were deducted from the $132,729.27 held in escrow for attorney fees, the trial court awarded Stevenson 75% of the remaining balance, plus interest, and awarded the remaining 25%, plus interest, to Maple Manor's attorneys. The trial court reasoned that litigation was necessary in this case to secure payment from Mid-Century and only Elkin had a valid claim for no-fault benefits against Mid-Century because Maple Manor lacked standing to bring a claim. The trial court recounted that, for the majority of the proceedings, Maple Manor's only claim was against Elkin for breach of contract. The trial court further explained that attorneys for both Maple Manor and Elkin had expended time and effort pursuing their claims. The trial court ultimately concluded that Stevenson "was responsible for 75% of the services that resulted in the settlement of this lawsuit and payment to the Maple Manor Plaintiffs" and Maple Manor's attorneys were responsible for the rest. Maple Manor argues that the trial court erred when it awarded attorney fees to Stevenson because only Maple Manor's attorneys are allowed to collect attorney fees in this case. We disagree.

An award of attorney fees is reviewed for an abuse of discretion. *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 422; 668 NW2d 199 (2003). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the principled range of outcomes." *Nat'l Waterworks, Inc v Int'l Fidelity & Surety, Ltd*, 275 Mich App 256, 258; 739 NW2d 121 (2007). "The trial court's factual findings underlying an award of attorney fees are reviewed for clear error. A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Colen v Colen*, 331 Mich App 295, 300; 952 NW2d 558 (2020) (quotation marks and citation omitted).

Michigan follows the "American rule" for attorney fees. *Haliw v Sterling Hts*, 471 Mich 700, 706; 691 NW2d 753 (2005). "Under that rule, each party is responsible for his or her own attorney fees unless a statute or court rule specifically authorizes the trial court to order an award of attorney fees." *Pransky v Falcon Group, Inc*, 311 Mich App 164, 194; 874 NW2d 367 (2015). "Consistent with the common-law American rule, the no-fault act generally requires each party to pay its own attorney fees." *Miller v Citizens Ins Co*, 490 Mich 905, 905; 804 NW2d 740 (2011). Attorney fees and other expenses "are usually not part of the matter at controversy between the parties." *ABCS Troy, LLC v Loancraft, LLC*, 337 Mich App 125, 132; 972 NW2d 317 (2021). But this Court has held that "the American rule is not an absolute one and that parties can contract around it . . . ." *Id*. "Contractual provisions for payment of reasonable attorney fees are judicially enforceable." *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007). When an award of attorney fees is permitted by a contract rather than a statute or court rule, a trial court may only award attorney fees pursuant to the terms of the contract. *Pransky*, 311 Mich App at 195. If a trial court awards attorney fees in a manner that is inconsistent with the terms of the contract, the trial court is, in effect, impermissibly entering a judgment "on a claim that was not brought in the original action in the guise of a postjudgment proceeding." *Id*.

It has long been recognized that contingency-fee agreements are permissible in cases brought under the no-fault act. *Miller*, 490 Mich at 905. MCR 8.121, in pertinent part, provides:

(A) *Allowable Contingent Fee Agreements.* In any claim or action for personal injury or wrongful death based upon the alleged conduct of another or for no-fault benefits, in which an attorney enters into an agreement, expressed or implied, whereby the attorney's compensation is dependent or contingent in whole or in part upon successful prosecution or settlement or upon the amount of recovery, the receipt, retention, or sharing by such attorney, pursuant to agreement or otherwise, of compensation which is equal to or less than the fee stated in subrule (B) is deemed to be fair and reasonable. . . .

(B) *Maximum Fee.* The maximum allowable fee for the claims and actions referred to in subrule (A) is one-third of the amount recovered. [MCR 8.121(A)-(B).]

"Because the authority to award attorney fees arises under the terms of the agreement, the attorney fees are a type of general damages." *Pransky*, 311 Mich App at 194. General damages arising from attorney fees "count toward the amount in controversy." *ABCS Troy, LLC*, 337 Mich App at 133. In other words, attorney fees under a contingency-fee agreement are apportioned from the actual recovery of the plaintiff from the defendant and are not paid in addition to the amount of the recovery. *Id.* at 132-133.

The payment of attorney fees from clients to attorneys under contingency-fee agreements may be enforced through the courts. *George v Sandor M Gelman, PC*, 201 Mich App 474, 476; 506 NW2d 583 (1993). An "attorneys' charging lien creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services." *Id.* A "charging lien is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *Id.* The right to an attorney's charging lien is derived from our common law; there is no statutory right to an attorney's charging lien. *Id.* at 477. Attorney's charging liens exist "as part of the court's inherent power to oversee the relationship of attorneys, as officers of the court, with their clients." *Souden v Souden*, 303 Mich App 406, 411; 844 NW2d 151 (2013). An attorney's charging lien provides "a means of securing the legitimate interest of the attorney in payment for his services and expenses on behalf of the client, but it is subject to the control of the court for the protection of the client and third parties as well." *Id.*

In *Miller*, 490 Mich at 905, the Supreme Court clarified the relationship between medical providers, insureds, and insurers regarding the award of attorney fees in claims for no-fault benefits under the state of the law as it existed when the cause of action in this case arose. "No-fault benefits are 'payable to or for the benefit of an injured person.' " *Id.*, quoting MCL 500.3112. When a claim for no-fault benefits is settled between an insured and an insurer, the full benefit amount is owed to the insured. *Id.* If the insured has a contingency-fee agreement with his or her attorney, the attorney's fee is paid from the insured's recovery from the insurer. *Id.* If a medical provider has not released or waived a claim against the insured, then the medical provider may recover from the insured the full amount for the services that were provided, even if the insured has already paid his or her attorney ⅓ of the recovery from the insurer. *Id.* A medical provider only has a direct cause of action against a no-fault insurer when the insured has assigned his or her claim to the medical provider and the medical provider brings its claim standing in the shoes of the insured. *Covenant Med Ctr, Inc*, 500 Mich at 218. Therefore, in this case, Maple Manor only

has a direct cause of action against Elkin, and not Mid-Century, because Elkin did not assign to Maple Manor his right to collect no-fault benefits from Mid-Century.

"A settlement agreement is a binding contract." *Dabish v Gayar*, 343 Mich App 285, 289; 997 NW2d 463 (2022). "Contracts, including settlement agreements, will be enforced as written unless they violate law or public policy." *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 663; 770 NW2d 902 (2009). "[B]y definition, a settlement agreement is a compromise of a disputed claim." *Id*. at 664. "Settlement agreements should not normally be set aside and once a settlement agreement is reached a party cannot disavow it merely because she has had 'a change of heart.' " *Vittiglio v Vittiglio*, 297 Mich App 391, 399; 824 NW2d 591 (2012). The settlement agreement in this case provides, in pertinent part:

> IT IS FURTHER AGREED that in exchange for the dismissal with prejudice and without costs of claims in the Oakland County Circuit Court, being case number 18-164787-NF Mid-Century shall issue a check in the amount of $275,000 ("the settlement funds") payable to "Ronald Elkin, Maple Manor Rehab Center of Novi Inc., Maple Manor Neuro center, Inc., and Smith Stevenson, P.C." and that from said settlement funds Elkin shall deliver the check in the amount of $275,000.00 to counsel for the Maple Manor Claimants. Counsel for the Maple Manor Claimants shall deposit $91,667 representing 1/3 of the settlement funds into an IOLTA account until such time as counsel for the Maple Manor Claimants and Elkin agree in writing to a distribution of attorney fees between Smith Stevenson, P.C. and Lebenbom & Rothman, P.C. or an Arbitration Award is entered by a mutually agreeable facilitator or arbitrator or an Order is entered by Judge Shalina Kumar providing for the distribution of said attorney fees between Smith Stevenson, P.C. and Stuart A. Lebenbom. In consideration of the payment of $275,000.00 less attorney fees in the amount of $91,667 or less paid to Smith Stevenson, P.C. by way of settlement, facilitation, arbitration Order of the Court [sic], the Maple Manor Claimants hereby release and forever discharge Elkin and his insurers, attorneys, administrators, agents, heirs, employees, assigns and David Elkin as well as any and all other persons, firms and corporations who might be claimed to be liable from liability [sic] for any and all past and present, causes of action, demands, or liabilities of any kind or nature, including but not limited to medical bills, room and board, products or services and/or personal protection insurance benefits[,] drugs, products, services and/or accommodations, both known and unknown, for any alleged, Injury [sic], ailment, illness or condition, including but not necessarily limited to claim of Injury [sic], ailment, illness or disability to Elkin arising out of the automobile accident occurring on October 19, 1985.

As discussed, attorneys for Maple Manor and Elkin could not agree on an apportionment of attorney fees through arbitration, so the trial court was required to enter an order to apportion attorney fees under the settlement agreement.

Maple Manor's arguments rely on a central tenet, which is that Maple Manor was the proper party to recover in this case, not Elkin. Maple Manor contends that Elkin's involvement in this case was unnecessary and should have been avoided through an assignment. Therefore, according to Maple Manor, Stevenson has no right to claim any attorney fees under the settlement

agreement. Maple Manor essentially asks this Court to ignore the settlement agreement and enforce the two attorney-fees agreements between Maple Manor and Elkin and their attorneys as if the applicable law is what existed before the Supreme Court decided *Covenant Med Ctr, Inc*, 500 Mich at 218.[5] But under the facts of this case, Maple Manor cannot show that its attorneys are entitled to attorney fees under a charging lien placed on the full amount of the settlement in this case. But for the settlement agreement, Maple Manor's attorneys would not be able to recover attorney fees directly from funds paid by Mid-Century. Further, Maple Manor only mentions the settlement agreement in the last paragraph of its brief on appeal, arguing that the issue of attorney fees should be resolved by relying on unpublished caselaw. Those cases do not establish that Maple Manor's attorneys are entitled to all the attorney fees that were set aside as part of the settlement agreement. Under the circumstances, the trial court did not err when it apportioned attorney fees in this case.

Maple Manor also argues that Stevenson cannot recover attorney fees in this case because Elkin did not receive a cash recovery. Maple Manor argues that it recovered all the funds from Mid-Century, so its attorneys are entitled to all the attorney fees payable in this case. It is not true, as Maple Manor contends, that Elkin was cut out of any recovery. Elkin had an interest in the funds paid by Mid-Century. Under the terms of the settlement agreement, Mid-Century agreed to send a check payable to Elkin, Maple Manor, and Stevenson's law firm. The agreement provided that Elkin "shall deliver the check in the amount of $275,000 to counsel for the Maple Manor Claimants." Maple Manor's attorneys were then required to deposit ⅓ of that amount to be paid in attorney fees into an IOLTA account to be held until that issue was later resolved. From a practical perspective, Elkin was to have physical possession of the payment instrument and deliver it to Maple Manor. Further, the payment procedures in this case reflected the liabilities of the parties, showing that Elkin shared in the recovery. Mid-Century owed no-fault benefits to Elkin, who was then responsible for paying Maple Manor for the provided services. *Miller*, 490 Mich at 905. There is no discernable difference between the circumstances of payment in this case and an alternative scenario in which Elkin first deposited a check from Mid-Century into his own bank account and then wrote a new check. The funds were paid by Mid-Century, and Elkin took possession of the payment and passed it on to Maple Manor.

Additionally, caselaw shows that payment procedures are essentially unimportant in a scenario like the one presented in this case. The Supreme Court has held that "[n]o-fault benefits are payable to *or for the benefit of* an injured person." *Miller*, 490 Mich at 905 (emphasis added). Accordingly, even if Elkin were not required to sign and deliver a check to Maple Manor and the check was sent directly from Mid-Century to Maple Manor, the check from Mid-Century still would have been a check for no-fault benefits owed to Elkin that were paid for the benefit of Elkin, not for the benefit of Maple Manor. Therefore, Elkin had a recovery in this case that was separate from Maple Manor's recovery because he secured Mid-Century's payment on his behalf.

---

[5] The services in this case began to be provided on March 15, 2017, which was about two months before *Covenant*, 500 Mich at 191, was decided. But the Supreme Court has held that its decision in *Covenant* applied retroactively. *W A Foote Mem Hosp v Mich Assigned Claims Plan*, 504 Mich 985, 985; 934 NW2d 44 (2019).

Next, the trial court could not simply have granted an attorney's charging lien in favor of Maple Manor's attorneys on the full amount that Maple Manor ultimately recovered in this case as if Elkin did not first recover the funds from Mid-Century. Maple Manor was in a class of parties that did not have standing to bring a claim for no-fault benefits against an insurer without an assignment of benefits. *Covenant Med Ctr, Inc*, 500 Mich at 218. In the absence of a valid claim between two parties, it follows that a court lacks the authority to award an attorney's charging lien against a third party's recovery in a manner that is inconsistent with the valid claims that are before the court. A plaintiff's attorney may be entitled to judicial enforcement of attorney fees from a settlement when the fees are authorized by a contract and are to be paid out of the plaintiff's recovery. *Pransky*, 311 Mich App at 195. But if a claim for attorney fees does not arise under such a contract or is not payable from a judgment or settlement in favor of the plaintiff, then any relief sought for attorney fees is an independent claim. *Id*. Under those circumstances, a trial court cannot entertain a claim for attorney fees as if it were part of the adjudication of the plaintiff's recovery. *Id*. The attorney must bring a separate action. *Id*.

It is implicit from the holdings in *Pransky* that a court's authority to enforce an attorney-fees agreement without separate litigation is derived from its authority to resolve the claims of the parties. It follows that, when a plaintiff's claim cannot succeed as a matter of law, a court may not award that plaintiff's attorney an attorney's charging lien on the recovery of another party. The attorney of a plaintiff without a valid claim must seek judicial enforcement of attorney fees through an independent action against the attorney's client. To award attorney fees when a plaintiff has no valid claim would be to impermissibly enter a judgment on a meritless claim "in the guise of a postjudgment proceeding." *Pransky*, 311 Mich App at 195. Here, the trial court did not preside over the resolution of a claim between Maple Manor and Mid-Century. The trial court entered an order resolving one claim between Maple Manor and Elkin and another claim between Elkin and Mid-Century. The trial court did not have the authority to grant an attorneys' charging lien in favor of Maple Manor's attorneys for the full amount that Mid-Century agreed to pay because Maple Manor had no direct interest in any payment from Mid-Century that was not secured by Elkin. As will be discussed in more detail, in the absence of the settlement agreement in this case, Maple Manor's attorneys only had the right to recover attorney fees from Maple Manor.

In a related argument, Maple Manor contends that, under the American rule, it would be improper to allow Stevenson to claim attorney fees from the recovery of Maple Manor because Maple Manor and Elkin were litigation adversaries. According to Maple Manor, allowing Stevenson to recover attorney fees makes Maple Manor the involuntary client of Stevenson. But it was Elkin who had a claim for no-fault benefits against Mid-Century. Maple Manor's status as an intervening plaintiff in Elkin's claim, at least under the circumstances of this case, would make it improper to award attorney fees to Maple Manor's attorneys out of Elkin's recovery of no-fault benefits. The right to intervene in a claim is governed by court rule. MCR 2.209. In pertinent part, MCR 2.209 provides:

> (A) Intervention of Right. On timely application a person has a right to intervene in an action:
>
> (1) when a Michigan statute or court rule confers an unconditional right to intervene;

(2) by stipulation of all the parties; or

(3) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(B) Permissive Intervention. On timely application a person may intervene in an action

(1) when a Michigan statute or court rule confers a conditional right to intervene; or

(2) when an applicant's claim or defense and the main action have a question of law or fact in common.

In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

It is unclear whether Maple Manor was granted leave to intervene by right or permissively. Under either scenario, it appears that intervention was improperly allowed in this case. In an unpublished decision, this Court has held that a medical provider cannot sustain a claim against an insurer as an intervening plaintiff because the Supreme Court's holding in *Covenant Med Ctr, Inc*, 500 Mich at 218, prohibits a medical provider without an assignment of benefits from bringing an action for no-fault benefits against an insurer. *Cox v Farm Bureau Ins Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued June 14, 2018 (Docket Nos. 336326, 336353, and 336356), p 5.[6]

Even if *Cox*, unpub op at 5, was wrongly decided and Maple Manor should have been allowed to bring a claim against Mid-Century as an intervening plaintiff, it still would have been improper for the trial court to award attorney fees to Maple Manor's attorneys from the amount Elkin recovered from Mid-Century under the American rule. Maple Manor and Elkin were litigation adversaries throughout this case, and, as discussed, only Elkin recovered from Mid-Century because Mid-Century either paid benefits to Elkin or on Elkin's behalf. Maple Manor and Elkin did not each have a right to a judgment entered in its favor against the same defendant. There was only one right to recovery from Mid-Century, and it belonged to Elkin. Maple Manor

---

[6] In another unpublished decision, this Court held that a medical provider may intervene in a no-fault benefits claim between an insured and an insurer for the purposes of seeking a declaratory judgment that the medical provider was owed for the services it provided to the insured and to advocate for its interest in payment, insofar as the medical provider's interest in payment may not be adequately represented by the insured and the insurer. *Estate of Lyle v Farm Bureau Gen Ins Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued September 19, 2019 (Docket No. 343358), pp 7-9. But this Court "reiterate[d] that the medical providers' intervention does not entitle them to pursue a direct claim for damages against defendants." *Id*. at 9.

-9-

was allowed to intervene in this case at the eleventh hour before settlement and sought to benefit from the resolution of a claim that it was not allowed to litigate on its own. When Maple Manor intervened, it would not have been bound by any judgment or settlement agreement that resolved Elkin's claim against Mid-Century. *Dean v Dep't of Corrections*, 208 Mich App 144, 151; 527 NW2d 529 (1994), aff'd 453 Mich 448 (1996). Had this case not been resolved by a trilateral settlement agreement where each party's claims were released, Maple Manor could only have sought recovery from Elkin for the full amount of the services it provided to Elkin. *Id*.

Considering how the interests of the parties were situated when intervention was allowed, Maple Manor's attorneys could not properly claim an attorney's charging lien on the recovery of the party that possessed the only legal interest in that recovery. As discussed, when an award of attorney fees is governed by contract, the attorney fees are deducted from the plaintiff's recovery unless a contract provides that attorney fees will be paid in addition to the amount recovered by the plaintiff. *ABCS Troy, LLC*, 337 Mich App at 133. Further, "[a]n attorney-client relationship must be established by contract before an attorney is entitled to payment for services rendered." *Plunkett & Cooney, PC v Capitol Bancorp Ltd*, 212 Mich App 325, 329; 536 NW2d 886 (1995). If the attorney fees in this case were not governed by the settlement agreement, allowing Maple Manor's attorneys to claim an attorneys' charging lien against the funds that Elkin recovered from Mid-Century would allow those attorneys to take funds from the recovery of an adverse party whom they did not represent. That result is not allowed under the American rule, which provides that attorneys may only collect fees from their own client. *Pransky*, 311 Mich App at 194. Maple Manor is not entitled to relief on this issue.

One of Maple Manor's main arguments is that it would be bad public policy if an attorney were allowed to advise an insured to not assign his or her claim to a medical provider, recover no-fault benefits on behalf of the plaintiff, taking ⅓ of that amount as a contingency fee in the process, and then leave the plaintiff liable to the medical provider for the full amount of the medical bills. Therefore, according to Maple Manor, this Court should not reward Stevenson by allowing him to collect attorney fees from Mid-Century's payment because Elkin refused to assign his claim to Maple Manor. We reject that argument. First, it is not our role to determine what is or is not good or bad public policy regarding an attorney's advice to a client. And certainly not our role to proclaim so on a universal basis. The "general considerations of supposed public interests" as ascertained by judges does not form the basis of public policy in this state. *Smith v Town & Country Props II, Inc*, 338 Mich App 462, 478; 980 NW2d 131 (2021). The individual circumstances of a particular case may dictate what is or is not good advice. Second, even if it was bad advice, there is a remedy available to a client that does not involve the litigant in the underlying dispute looking out for the client's interests. Third, to the extent that Maple Manor's arguments suggests ethical considerations, there are avenues more appropriate than an appeal to address such concerns if a client believes that their attorney has breached the Code of Professional Responsibility in the attorney's representation of the client.

Finally, in support of its argument that Stevenson should be cut out of the award of attorney fees in this case, Maple Manor relies on a number of unpublished decisions of this Court, one of which merits brief discussion because the trial court initially took the issue of attorney fees under advisement, expecting that this Court would resolve the question of how to divide attorney fees in this case when it decided *Valentino*, unpub op at 1. *Valentino* does not control the outcome of this case nor does it require that Maple Manor's attorneys receive all the attorney fees set aside by the

settlement agreement. This case is distinguishable from *Valentino* in important ways. In that case, the attorney claiming an attorney's charging lien did not represent the insured in litigation. *Valentino*, unpub op at 1-2. The attorney merely assisted the insured in obtaining insurance coverage for the medical bills. *Id.* But the insurer never contested the claims and agreed to pay the medical providers. *Id.* The attorney then kept funds from checks the insurers issued jointly to the medical providers and the attorney, despite the fact that the medical providers had the right to full payment for the provided services. *Valentino*, unpub op at 2. When the attorney refused to remit the retained funds, the medical provider brought a claim of conversion against the attorney. *Id.*

In contrast, in this case, litigation was necessary to recover no-fault benefits from Mid-Century. As discussed above, Elkin was the only party who could recover no-fault benefits from Mid-Century. Therefore, Elkin's involvement in the litigation was necessary for Maple Manor to receive any involuntary payment from Mid-Century. Further, this case was resolved through a trilateral settlement agreement between Maple Manor, Elkin, and Mid-Century. That settlement agreement released Maple Manor's claim against Elkin and provided for the apportionment of attorney fees to Stevenson. Accordingly, Maple Manor is not entitled to relief on the basis that Stevenson could not collect attorney fees as a matter of law.

Finally, it should be noted that Maple Manor has only offered legal arguments for why Stevenson should not be entitled to any attorney fees. Maple Manor has not challenged any of the trial court's factual findings underlying the actual award in this case. That is to say, Maple Manor makes no argument that the trial court erred in apportioning attorney fees beyond that it was error to award *any* attorney fees to Stevenson.[7] Accordingly, we need not address the propriety of the actual division itself.

---

[7]Regardless, there is no indication from the record that the trial court's apportionment of attorney fees was made in error. Stevenson began sending demand letters to Mid-Century no later than April 17, 2018, for payment of medical services provided to Elkin by Maple Manor. On May 3, 2018, Stevenson sent an e-mail to counsel for Mid-Century voluntarily giving up any right to attorney fees for the $172,000 that Mid-Century paid to Maple Manor for services performed for Elkin in 2017, stating that he did not believe he had performed enough work to be entitled to a fee. Elkin filed his cross-claim against Mid-Century on July 6, 2018. It was only at that point when Stevenson asked Mid-Century to begin to have his firm included as a payee on any checks to Maple Manor for services provided to Elkin. At that time, Elkin was receiving care at Maple Manor, and Mid-Century was not paying Maple Manor for ongoing services. Because Elkin did not assign to Maple Manor his right to collect PIP benefits, Elkin was responsible for the bills that were accruing. On October 3, 2018, in the midst of Maple Manor sending those checks, the trial court entered its order dismissing Maple Manor's claim against Mid-Century. For the next six months, Elkin was the only party litigating a claim against Mid-Century. When settling his claim against Mid-Century, Elkin secured a payment from Mid-Century that was large enough for Maple Manor to agree to release any claim it had against Elkin. Maple Manor conveniently ignores these undisputed facts.

-11-

Affirmed.  Elkin may tax costs.  MCR 7.219(a).

/s/ Anica Letica
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney